**In re GREEN VALLEY BEER, a Pennsylvania Corporation, Debtor.**

**Irwin Bank & Trust Company, Applicant.**

**Bankruptcy No. 00–20155.**
**Motion No. 02–0644.**

United States Bankruptcy Court, W.D. Pennsylvania.

July 29, 2002.

Dennis J. Spyra, Pittsburgh, PA, for debtor.

Timothy A. Krieger, Paul S. McGrath, McGrath & Associates, P.C., Pittsburgh, PA, for Irwin Bank & Trust Company.

## MEMORANDUM OPINION[1]

JUDITH K. FITZGERALD,
Bankruptcy Judge.

Before the court is Debtor's Objection to Final Application for Allowance of Reimbursement of Fees and Expenses by Oversecured Creditor. Debtor asks us to deny the application for counsel fees of Irwin Bank & Trust Company ("Irwin Bank" or "the bank") in the amount of $24,610.30 and expenses of $1,104.13. The application states that the statutory predicate for allowance of these expenses is § 506(b) of the Bankruptcy Code which provides:[2]

> To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of

---

**1.** The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

**2.** Docket No. 147, page 1.

such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

Debtor objects that Applicant's request is not reasonable and that the "Fee Application represents Applicant's attempt to pass excessive legal fees and costs on to the Debtor without any corresponding benefit to the estate." [3] Debtor also asserts that the bank was more than adequately protected by its equity in Debtor's assets and by adequate protection payments throughout the administration of the estate. [4] On the other hand, the bank argues [5] that the work was substantial, non-routine, extended over a long time, and involved different kinds of services. In the alternative, if the application is insufficient, it contends that the court should hold an evidentiary hearing to determine the necessity, nature and extent of the legal services provided. However, concerning the issue of the adequacy of the record before us to rule on the Objection, we note that the fee application included copies of invoices from McGrath & Associates, P.C., Irwin Bank's counsel. Moreover, oral argument afforded both parties the opportunity to explain their views as to whether the charges applied for are reasonable. Additionally, as part of the Objection, Debtor asks us to reduce the bank's allowed fees by amounts Debtor expended which, it contends, were unnecessary but occasioned by the bank's refusal to, and delay in, disclosing payment history information. Debtor seeks to assess against the bank the legal fees Debtor incurred to compel the bank to disclose the needed information and $7,500 representing two quarters worth of U.S. Trustee fees because Debtor could not present a plan for confirmation until it had adequate factual information which was in the bank's possession.

■  Regarding the burden of proof for allowance of reasonable fees, costs and expenses under § 506(b), *In re Harman Supermarket, Inc.*, 44 B.R. 918, 919 (Bankr.W.D.Va.1984), gives a comprehensive review of bankruptcy and appellate authority and announces that

> When applications are filed requesting allowances payable from the estate pursuant to Federal Bankruptcy Rules, the burden of proof to establish entitlement to any reasonable allowance of fees for professional services rendered is upon the movant.

In *Harman,* as here, the Debtor challenged the fee application of a bank whose counsel had expended time protecting its interests despite the bank's oversecured position. Explaining one factor in its reasoning for allowing only part of the fees requested, the court said

> A review of the application, and attachments consisting primarily of time entries and costs expended, does reflect that the hearings scheduled and continued were unusually large for a Complaint seeking simply relief from stay and protection of a secured creditor whose claim was substantially oversecured and never questioned as to its validity. Many of the entries reflect telephone conversations between the attorney and a representative of the Bank, without any indication as to the necessity therefor or the substance thereof. . . .
>
> . . . 11 U.S.C. § 506 directs this Court to fix only a fee for creditor's counsel

---

3.  Docket No. 151, Paragraph 14.

4.  *Id.,* Paragraph 21.

5.  Oral argument on the Objection was held on March 1, 2002.

which is "reasonable".... Therefore, a reasonable fee under these guidelines fixed by the court does not necessarily mean the fees charged between the attorney and his client. As between the attorney and client, the fee is a contractual matter between the two parties. Such fee may be subject to a variation where a reasonable standard is applied in cases where creditors' and debtors' funds in these estates are being disbursed to the payment of secured creditors' claims.

*Harman,* 44 B.R. at 920–921. In *In re Oliver,* 183 B.R. 87 (Bankr.W.D.Pa.1995), the court reduced some categories of requested fees and required an evidentiary hearing on others where the issue was delinquency of mortgage payments. In doing so, the court reasoned that

> [w]hen the nature of time entries or individual portions of the time entries make it impossible to determine which items were reasonably necessary for the protection of the creditor's interests, the Court must rely on its own knowledge and experience in arriving at the proper fee award. [Citation omitted.]

*Oliver,* 183 B.R. at 87.

*In re Danise,* 112 B.R. 492 (Bankr. D.Conn.1990), and *In re Gwyn,* 150 B.R. 150 (Bankr.M.D.N.C.1993), confirm that the burden of proof to show reasonableness of attorney fees falls on the applicant/oversecured creditor. *Gwyn,* 150 B.R. at 153, also explains that the court has "very broad discretion in determining the amount of attorneys' fees and expenses to be awarded." [6] Although none of these cases is controlling authority for us, we find them well-reasoned. To the extent that the facts here are similar, we will adopt a similar approach.

Attempting to meet its burden, the bank has submitted documents and exhibits explaining the creditor-debtor relationship between Irwin Bank and Green Valley Beer which predated Debtor's filing of its Chapter 11 petition and an explanation of their renegotiated relationship postpetition.[7] The bank also has outlined its request for fees in nine categories of services [8] and presents a chart outlining the hourly rate of service and total hours billed for each of twenty-four persons of McGrath & Associates, P.C., who provided the legal services represented in the application. A separate categorization of services summarized by reorganization stages has also been provided.[9] Copies of numerous invoices are attached to the Final Application. Debtor has not challenged any of the billing rates and, during the March 1st argument, conceded that they were reasonable. Debtor objects that the case was "over-lawyered" inasmuch as 24 people worked on the file. Creditor explained at argument that there had been a changeover in counsel's firm and most of the 24 people were paralegals.

Responding to the proffered evidence, Debtor argues that $35,000 [10] worth of le-

---

**6.** *Gwyn* cites *In re Kroh Bros. Development Co.,* 105 B.R. 515, 520 (Bankr.W.D.Mo.1989), for the same "broad discretion" proposition.

**7.** Docket No. 149.

**8.** *Id.,* pp. 5 and 6.

**9.** *Id.* Chart, pp. 8 through 10.

**10.** The Summary Cover Sheet of Professional Fees in Chapter 11, Docket No. 147, Para-

graph 5, "requests reimbursement of compensation paid to counsel of $24,610.30, and reimbursement of expenses incurred of $1,104.13." Nevertheless, at oral argument Debtor represented that $35,000 of fees were being requested for a $140,000 loan. The difference of $9,000 represents fees for work which Debtor argues is being billed again in Irwin Bank's Application. However, there is no duplicate billing. Rather, Debtor agreed to pay $9,000 in fees incurred by Irwin Bank

gal fees involved in this dispute, which cover services from 4/1/99 through plan confirmation, was not necessary to protect a clearly oversecured creditor. Debtor cites to the facts that the original loan balance was $125,000, the outstanding balance of the mortgage the month before the Chapter 11 filing was approximately $82,000 and the alleged value of the realty was approximately $150,000.[11] In rebuttal, the bank has not disputed that it is oversecured or that its security encompasses two pieces of realty[12] each worth at least as much as the outstanding balance on the mortgage. The bank has not disputed that it also holds a security interest in Debtor's liquor license and equipment. The bank was clearly overcollateralized. It had little, if any, risk of loss. Debtor argues that because Irwin Bank had such little risk of loss, the extent and amount of legal work was unwarranted. Further, Debtor argues: 1) 43.8 hours spent on legal work after a stipulation was approved, which Debtor conscientiously honored, providing for adequate protection payments of $4,000 per month, is excessive; 2) having 24 people working on this case is unnecessary; 3) much of the work was routine especially for an experienced firm;[13] and 4) but for the bank's delay of nearly a year in providing accounting information, which was essential for plan confirmation, much of the work would not have been needed.

Irwin Bank rebuts these arguments by saying that 1) the work was not uncompli-

cated; 2) the legal services were provided over the course of two chapter 11 filings and three state court actions;[14] 3) most of the twenty-four persons who worked on the case did not bill at an attorney's rate; 4) the reason so many people worked on the file is that there were personnel changes at the firm during these proceedings; 5) both a loan workout agreement which Debtor breached and a default workout agreement necessitated discussion and drafting of documents; 6) the stipulation was not "boilerplate" and required individualized legal analysis that necessitated time billing; and 7) billable time was also necessary to discuss accounts receivable.

■■■ "[T]he Court is to bear in mind that the Debtors' estate must be administered as efficiently and economically as possible." *See generally, In re Smith,* 109 B.R. 421, 423 (Bankr.D.Mont.1988), quoting *Matter of First Colonial Corp. of America,* 544 F.2d 1291, 1299 (5th Cir.), *cert. denied sub nom. Baddock v. American Benefit Life Ins. Co.,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). Initially, in the case at bench, we see that of six different attorneys who worked on this file, three each billed over fifty hours, another billed seven hours, and another two each billed two hours or less. In this case, the overcollateralized creditor's exposure was less than $82,000. It concedes that it had sufficient collateral to protect its claim nearly three times over and it was receiving regular adequate protection payments

---

through 3/31/99. The $9,000 at issue was incurred from 4/1/99 to 12/31/99 while Debtor was paying the bank per the stipulation and as the result of Debtor's default in the loan work-out agreement. The rest of the bill relates to legal services provided after December 31, 1999.

**11.** Docket No. 147, Irwin Bank's Final Application for Allowance of Reimbursement of Fees and Expenses by Oversecured Creditor (Bank's Final Application), pages 2 and 3.

**12.** The assets are Debtor's business property and an otherwise unencumbered personal residence.

**13.** Specifically Debtor argues that work on the stipulations was not complicated or novel.

**14.** The state court actions included a replevin action, a mortgage foreclosure action, and a confession of judgment procedure.

throughout this case. That the firm used six different attorneys, three of whom each billed over fifty hours of work,[15] was not reasonable in this case. There is no averment in the application, nor was an argument made, regarding expertise above and beyond the characteristically competent work of many bankruptcy attorneys and paralegals. The fact that the firm had a changeover in personnel that may have necessitated duplication in services may be charged to the firm's client, but is not, under the circumstances of this case, a reasonable charge against this estate where adequate protection payments were faithfully made and the creditor well oversecured.

█ We also note that descriptions of some of the work attributed to individuals billing at the higher rates impress us as tasks which could have been performed by paralegals, at a lower rate, although we recognize that often such work must be reviewed by a supervising attorney. For these reasons, we find that the charges against this estate are not reasonable.

In *In re F.B.F. Industries, Inc.*, 1995 WL 691893 (Bankr.E.D.Pa.), the court quoted authority from outside this circuit to construe § 506(b) as follows:

> [An] allowed secured claim may only be supplemented with expenses and attorney's fees if the underlying agreement provides for them, and post-petition interest and expenses will be treated as secured only if they are reasonable and the value of the collateral first exceeds the underlying allowed claim.... *Mason & Dixon Lines v. First National Bank*, 86 B.R. 476, 482–83 (M.D.N.C.1988) (footnote omitted), *aff'd*, 883 F.2d 2 (4th Cir.1989).

*F.B.F. Industries*, 1995 WL 691893 at * 2.

The *F.B.F. Industries* court reviewed the amounts applied for, category by category. It allowed some in full, reduced others, and disallowed some in full. Its rationale for this approach was stated thus:

> An oversecured creditor, however, is not entitled to attorneys' fees for every action it takes by claiming that its rights have been affected.
>
> > [I]t is clear that creditors are entitled to engage counsel and pay for constant, comprehensive, and aggressive representation, ... [but] where services are not reasonably necessary or where action is taken because of an attorney's excessive caution or over-zealous advocacy, courts have the right and the duty in the exercise of their discretion to disallow fees and costs under § 506(b).

*Wonder Corp. of America*, 72 B.R. at 591. *See also [In re] Dalessio* 74 B.R. [721,] 723. ("A court should not reward a creditor whose overly aggressive attorney harasses and opposes the debtor at every stage of the bankruptcy proceeding, nor should an oversecured creditor be given a blank check to incur fees and costs which will automatically be reimbursed out of its collateral.")

We agree with courts that have required the secured creditor under § 506(b) to meet the billing judgment standard used when awarding fees under § 330, *i.e.*, the amount for which it seeks compensation must bear a rational relationship to the amount of its secured claim or risk non-payment. [Citations omitted.]

*F.B.F. Industries*, 1995 WL 691893 at * 4.

In *In re Ward*, 190 B.R. 242, 246 (Bankr.D.Md.1995), a bankruptcy court from a different circuit adopts a similar approach:

---

15. Much of this time was out of court or meeting time.

In determining the reasonableness of fees and costs, this court requires that the fee applications contain a certain level of content and specificity. *See In re Consolidated Properties Ltd. Partnership*, 152 B.R. 452, 459 (Bankr.D.Md. 1993) (Derby, J.). Courts have refused repeatedly to approve unitemized disbursements for services that are lumped together in a single entry, because such action inhibits the court from estimating the reasonableness of the individual services and their value to the debtor's estate. *Id.;* see also *In re Kroh Bros. Development Co.*, 105 B.R. 515, 522 (Bankr.W.D.Mo.1989). In a comprehensive study of the problem, Judge James F. Schneider of this court instructed:

> [Lumping is a] practice universally disapproved by bankruptcy courts for two reasons. One, it permits an applicant to claim compensation for rather minor tasks which, if reported individually, would not be compensable. Two, it prevents the Court from determining whether individual tasks were expeditiously performed within a reasonable period of time because it is impossible to separate into components the services which have been lumped together.

*In re Leonard Jed Co.*, 103 B.R. 706, 713 (Bankr.D.Md.1989). Courts faced with time entries containing multiple tasks or services generally employ one of two courses of action. Some courts have denied fully all compensation requested for the lumped time entries. *See, e.g., In re Breeden*, 180 B.R. 802 (Bankr. N.D.W.Va.1995). Other courts, however-

er, have made a global adjustment for all the time lumped together. These courts simply reduce compensation for such entries by a certain percentage instead of denying all fees outright. *See, e.g., In re Adventist Living Ctrs., Inc.*, 137 B.R. 701, 706 (Bankr.N.D.Ill.1991). Recourse taken under either method is based solely on an applicant's failure to sustain its burden of proving the reasonableness of the fees provided. *In re Poseidon Pools of America, Inc.*, 180 B.R. 718, 731 (Bankr.E.D.N.Y.1995). The action taken by courts does not necessarily suggest that the services provided were not beneficial to the estate. *In re Breeden*, 180 B.R. 802, 810 n. 7 (Bankr.N.D.W.Va.1995).

The *Ward* court goes on to describe the applicant law firm as producing "excellent work;" the attorneys as "knowledgeable;" but the issues as "not complex." All of these things are true in the pending matter. The *Ward* court found that "[a]lthough these charges are not necessarily wrong or improper, such expense is more properly directed toward the creditor instead of the debtor." *Ward*, 190 B.R. at 251.[16]

We take additional note of *In re Smith*, 109 B.R. 421, 423 (Bankr.D.Mont.1988), where the court substantially reduced the attorney fees requested by an oversecured creditor by examining the items listed individually and explaining its reduction in this fashion:

> The Bank was at all times conceded to be an oversecured creditor by the Debtors and, therefore, its claim was never at issue.... [T]his Court finds that a legal

---

**16.** We note that many of the billing statements contain items where groups of tasks are put together. Were we to attempt to determine which tasks of the line items containing long aggregations of tasks were unnecessary, we would be stymied by the grouping together without specific breakdown of time for each by individual task. *See,* for example, the first item listed on Invoice # 11994 (attached to Bank's Final Application, Docket No. 147) for work performed on 04/14/99 by an individual identified as JM. This item aggregates more than ten tasks which total 7.75 hours.

fee which is nearly one-third of the Bank's claim is not reasonable or economically prudent.

We recognize as appropriate this concern for economy.[17] Here, the same or similar tasks are performed and billed on successive days or grouped in such a way that they show billing by more than one professional,[18] resulting in excessive charges to this estate. The Court explained in *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 847 (3d Cir.1994), that the requisite degree of scrutiny:

"In sum, if after initial review the bankruptcy court determines that, while the fee applicant made a good faith effort to comply with the particularization requirements of § 330(a), Rule 2016(a), and applicable local rules, either the information provided does not allow for a reliable determination of compensability (because it is too vague or otherwise), or that the court would benefit from legal argument, it may allow the professional reasonable time to supplement the application either a more detailed description of the questionable services, or with a memorandum of points and authorities in support of the application, respectively. If the bankruptcy court at any time irrespective of any opportunity to supplement, denies some amount of the requested compensation and if it determines that the applicant sought in good faith to comply with the aforementioned

specificity requirements, it should notify the applicant of its particular reasons for denying the fees, and, should he or she make a timely request for one, allow the professional the occasion to defend his or her fee application with legal arguments and/or evidence (of market practices, etc.) at a hearing. Moreover, if after the hearing the court adheres to its views and disallows some of the requested compensation, it should enter sufficient findings of fact and conclusions of law in the record to facilitate appellate review."

We are mindful of the Third Circuit's further analysis in *Busy Beaver*, 19 F.3d at 845:

In any event, we are convinced that if the bankruptcy court plans to disallow certain items of compensation, § 330(a) on its face first contemplates the applicant's right to a hearing. [Footnote omitted.] We understand that a court may simply wish to note its specific concerns, if any, and allow the fee applicant a reasonable opportunity to supplement his or her fee application in response thereto before holding an oral hearing, as hearings on a routine matter like compensation for services might overwhelm already swollen calendars. [Citation omitted.]

Of course, *Busy Beaver* interprets § 330(a), a statute similar but not identical

---

**17.** *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 843 (3rd Cir.1994), states: "[T]he task of reviewing fee applications falls by default onto the bankruptcy courts.... Disagreeable as the chore may be, the bankruptcy court must protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors." Further, at page 844–45, the court continued: "[W]e do not intend that a district [or] bankruptcy court, in setting an attorney['s] fee, become enmeshed in a meticulous analysis of every detailed facet of the profession-

al representation. It ... is not our intention that the inquiry into the adequacy of the fee assume massive proportions, perhaps even dwarfing the case in chief."

**18.** For example, Invoice # 14240 and Invoice # 15229 list several attorneys or para-professionals reviewing and discussing matters related to the loan history; Invoice # 15229 shows several attorneys or para-professionals working on objections to the disclosure statement.

to § 506(b) which is at issue here. Although *Busy Beaver* is also not fully apposite, we nonetheless consider its approach to resolution of the pending issue regarding allowance of compensation.

We will address the portions of the fee application which we find to be uncompensable from this estate.

■ Debtor asks us [19] to disallow $2,662.67 from three specific invoices, arguing that the invoices relate to Debtor's requests for a payment history that the bank refused to answer and that the bank honored the request only after the court threatened dismissal of the claim. Because Debtor is correct that it took nearly a year and an order from this court [20] to produce records about the accounts receivable, which were necessary for Debtor's Disclosure Statement and Plan of Reorganization, we accept Debtor's argument that these fees should be reduced.[21] The amounts represented on these invoices: # 15382 (for $374.61), # 16059 (for $1,446.69) and # 16211 (for $841.29) will be disallowed.

■ The listing under Category D,[22] General Bankruptcy Matters ($1,431.69) in Bank's Final Application, recites "All matters relating to administrative and monitoring functions and issues in the present bankruptcy not specifically related to any of the other categories . . .," and lacks any kind of meaningful description which would allow this court to determine reasonableness. Moreover, other specific categories include administrative and monitoring functions. Thus this category fails to meet Applicant's burden and will be disallowed in full.

■ Because of the nearly twelve-month delay occasioned by the bank, which led to additional legal services by both this creditor and the Debtor, we will also reduce by 30% the amount categorized as "Disclosure Statement and Plan of Reorganization." The 91.4 hours, which total $9,444.79, will thus be reduced by $2,833.44.

■ In summary, we are persuaded for three primary reasons that there should be a reduction in fees. First, the bank's persistent delay in providing materials requested by Debtor occasioned some of the time billed to produce the documents as well as to continue monitoring this bankruptcy case. Second, staffing this case with twenty-four professionals was excessive. Debtor should not bear the brunt of a changeover in creditor's counsel's personnel. Third, approximately $25,000 worth of fees and expenses to protect an $82,000 remaining obligation that was backed up by collateral worth three times that much strikes us as excessive. However, we note that Debtor's past history of loan defaults necessitated more involvement of bank's counsel than might otherwise have been needed.

Likewise, while we agree with Debtor that some of the work would not have been necessary absent the bank's delay and

---

**19.** Docket No. 151, Objection to Final Application For Allowance of Reimbursement of Fees and Expenses by Oversecured Creditor, Paragraph 24.

**20.** Many of the recurring routine tasks such as review of loan payment history and communications (by telephone of letter) with Attorney Spyra's office would have been unnecessary if these records had been provided timely.

**21.** *See,* by analogy, a ruling under § 327 and § 330 in *In the Matter of Grabill Corp.,* 983 F.2d 773 (7th Cir.1993), regarding the effect of applicant's delay on the court's decision to deny attorney fees.

**22.** Docket No. 147, Bank's Final Application, page 10.

while we accepted some of Debtor's other arguments in deciding the issue of excessiveness and proportionality of fees relative to the amount of risk and the total amount owed, we do not agree with Debtor that all of the bank's counsel's tasks demanded only "boilerplate" documents. We have made an appropriate reduction to reflect the excessive fees.

We find no merit to Debtor's other Objections.

Hence, the final calculation reduces the total fees and expenses requested of $25,714.43, by first $2,662.59 (the sum of the three disallowed invoices), then by $1,431.69 (the amount requested for Category D, the undifferentiated "General Bankruptcy Matters"), and finally by $2,833.44 (a 30% reduction of amounts billed for "Disclosure Statement and Plan of Reorganization"). This leaves an amount to be paid by Debtor of $18,786.71.[23]

An appropriate order will be entered.

### ORDER

AND NOW, this 29th day of July, 2002, for the reasons expressed in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED, and DECREED** that Debtor's Objection to Applicant's Final Application for Professional Fees [and Expenses] in Chapter 11 will be **GRANTED IN PART.** Fees and expenses in the total amount of $18,786.71 are allowed.

---

**23.** Debtor pointed out, at the March 1st argument, that during the nearly twelve months Debtors waited to get the information to be able to craft a plan for confirmation, Debtor was spending $3,750 quarterly on U.S. Trustee fees. We cannot ascertain whether Debtor could have confirmed its plan so as to avoid these fees. Even if we could, we do not view Debtor's objection to bank's counsel's fees as the appropriate vehicle by which to address whether the bank should be held responsible, as a sanction for its conduct, for the United States Trustee fees.