**In re Maria COATES, Debtor.**

No. 02–84836.

United States Bankruptcy Court, C.D. Illinois.

April 17, 2003.

Gregg W. Bittner, Peoria, IL, for debtor.

Pierce and Associates, Chicago, IL, for Litton Loan.

Michael D. Clark, Peoria, IL, trustee.

## OPINION

THOMAS L. PERKINS, Bankruptcy Judge.

This matter is before the Court on the objection of Litton Loan Servicing Incorporated/Credit–Based Asset Servicing and Securitization LLC (LITTON LOAN) to confirmation of the Chapter 13 Plan filed by Maria Coates, the Debtor (DEBTOR), and the DEBTOR'S objection to Claim # 8 filed by LITTON LOAN. The main issue is the amount of LITTON LOAN'S prepetition mortgage arrearage that the DEBTOR proposes to cure in the plan.

## FACTS

On April 9, 1999, the DEBTOR borrowed $34,093.16 from Nationscredit Financial Services to purchase a home, executing a note and mortgage. The note and mortgage were assigned to LITTON LOAN. The mortgage contains a standard provision allowing for the recovery of attorney fees and expenses incurred by the mortgagee. The DEBTOR defaulted on her payments and LITTON LOAN instituted foreclosure proceedings.

The DEBTOR filed a Chapter 13 petition on October 25, 2002. She filed a plan proposing to pay LITTON LOAN'S arrearage in the amount of $1,950.00, while making current monthly mortgage payments outside the plan. LITTON LOAN filed a written objection to the plan, contending that the actual prepetition arrearage claim totaled $8,124.47. At the confirmation hearing held on December 16, 2002, in accordance with its earlier decision in *In re McMullen*, 273 B.R. 558 (Bankr.C.D.Ill. 2001), the Court directed LITTON LOAN, appearing through local counsel, to file an affidavit with supporting documentation to substantiate its arrearage claim, including the various fees and costs (referred to as a "*McMullen* affidavit"). The DEBTOR was directed to respond to the affidavit within fourteen (14) days of its filing, by specifying her objection to each item, and a continued hearing was set for January 27, 2003.

On the same day as the confirmation hearing, LITTON LOAN filed a proof of

claim in the amount of $8,124.47. Under a heading captioned "Remarks" at the bottom of the claim, LITTON LOAN added the following itemization:

| | | |
|---|---|---|
| 12/01–10/02 | 11 @ 321.23 | 3,533.53 |
| ESCROW SHORTAGE | | 1,069.59 |
| PREV. FC ATTY FEES & COSTS | | 1,020.00 |
| PROPERTY INSPECTIONS | | 80.00 |
| FORECLOSURE COSTS | | 185.00 |
| FORECLOSURE FEES | | 1,100.00 |
| BANKRUPTCY FEES | | 450.00 |
| BPO | | 100.00 |
| PREVIOUS SERVICER EXPENSE | | 586.35 |
| TOTAL | | 8,124.47 |

The only documents attached to the proof of claim were a copy of the mortgage, the corporate assignment and affidavits of service in the foreclosure action.

On December 30, 2002, in lieu of filing the requested affidavit, LITTON LOAN filed a "response" to the Court's directive, relying on Section 502(a) of the Bankruptcy Code and asserting that it need not "prove up" its claim, absent the filing of a written objection to the claim. LITTON LOAN requested that the Court reconsider its ruling.

On January 7, 2003, the DEBTOR objected to the proof of claim.[1] In accordance with the procedures followed by this Court, notice was given to LITTON LOAN of the filing of the objection to its claim, directing it to file either an answer to the objection or an amended claim. LITTON LOAN'S response took the form of a motion for a more definite statement, again seeking information from the DEBTOR as a precondition to providing information to her.

On January 27, 2003, at a hearing upon LITTON LOAN'S response to the Court's direction to file a *McMullen* affidavit, this Court vacated its prior ruling, explaining that the procedure had been developed for the benefit of the litigants in an attempt to facilitate the exchange of information and identification of the issues and facts in dispute, but that mortgagees and their attorneys repeatedly failed to comply with the disclosure requirement. The Court set an evidentiary hearing on confirmation and the objection to the claim on March 4, 2003.

On February 4, 2003, in an oral ruling, this Court denied LITTON LOAN'S motion for a more definite statement, first noting that under Federal Rule of Bankruptcy Procedure 7012(b), Federal Rule of Civil Procedure 12(e), which permits the filing of a motion for a more definite statement, applies in adversary proceedings, but does not apply to contested matters under Bankruptcy Rule 9014(c). Turning to the merits of LITTON LOAN'S request, this Court held that the "deemed allowed" status accorded a proof of claim under Section 502(a) of the Bankruptcy Code continues only until an objection to the claim is filed. Given the paucity of information in the proof of claim itself, this Court determined that the objection filed by the DEBTOR was sufficient to join the issue. Finally, noting LITTON LOAN'S refusal to comply with the Court's established procedure requiring an affidavit from the mortgagee followed by a specific response from the debtor, the Court suggested that the information vacuum was largely the result of its own making.

The evidentiary hearing was held on March 4, 2003. The only witness to testify was the DEBTOR. She admitted LITTON LOAN'S assertion that she was eleven (11) monthly payments behind at the time she filed for bankruptcy protection and testified that she would be able to increase her plan payments in order to provide for the increased payment arrearage. The DEBTOR testified that she was not aware of the pending foreclosure ac-

---

**1.** The DEBTOR'S objection is nonspecific. The basis of the objection is that the claim is filed for an amount in excess of that provided for in the confirmed plan.

tion, that she was never served with process and that no one ever entered her home for a property inspection.[2] LITTON LOAN offered no evidence at the hearing. Its attorney advised the Court that immediately before the hearing, he had filed an amended proof of claim with the Bankruptcy Clerk's Office. That claim was not introduced into evidence, nor was any other documentation introduced.

### ANALYSIS

■ Perhaps the most common reason that debtors choose Chapter 13 over Chapter 7 is a desire to save their house from foreclosure. Most often, mortgage lenders will not agree to permit a Chapter 7 debtor who is in default on his mortgage payments to reaffirm unless the mortgage loan is brought current. Lacking the cash to cure the arrearage, such debtors turn to Chapter 13 which permits a prepetition payment default on a mortgage to be cured in installments through the Chapter 13 plan, while the regular postpetition mortgage payments are paid when due. 11 U.S.C. § 1322(b)(5).

■ A debtor's obligation to cure the prepetition mortgage arrearage is enforceable as a condition of confirmation. A plan that fails to provide for a complete cure is not confirmable over the objection of the mortgagee. Most of the Chapter 13 cases filed in this District involve the cure of a prepetition mortgage arrearage. Since only a small percentage of Chapter 13 plans provide for a one hundred percent (100%) payout to unsecured creditors, the determination of the allowed amount of the prepetition mortgage arrearage, in most cases, has a significant effect on unsecured creditors: the higher the amount of the arrearage, the less that unsecured creditors will be paid. The Supreme Court has characterized the claim determination process as one "of basic importance in the administration of a bankruptcy estate," without which "unmeritorious or excessive claims might dilute the participation of the legitimate claimants." *Gardner v. State of N.J.*, 329 U.S. 565, 573, 67 S.Ct. 467, 471–72, 91 L.Ed. 504 (1947).[3]

Since mortgage lenders seldom sit on their rights in the face of nonpayment, it is often the case that a foreclosure action will have been commenced prepetition. As provided by most standard promissory notes and mortgages, attorney fees and expenses incurred by the lender on account of a default, are collectable from the mortgagor. These fees and expenses become part of the claimed arrearage amount that is so often at issue in Chapter 13 cases.[4] Accordingly, this issue, so fre-

---

**2.** The reference to the foreclosure suit in the Statement of Affairs undercuts the DEBTOR'S testimony that she was unaware of the foreclosure proceeding. Whether the DEBTOR had been properly served with the foreclosure complaint or whether she was aware of the foreclosure at the time the bankruptcy was filed is not pertinent to the Court's decision.

**3.** In the Chapter 13 context, where the debtor pays a fixed sum into the plan, the fee-shifting provisions of mortgages serve, in effect, to shift the creditor's fees not to the debtor, but to the debtor's unsecured creditors. Thus, as with secured claims and priority claims which are paid ahead of unsecured claims, the debtor and the trustee are responsible for scrutinizing claims for prepetition mortgage arrearages to ensure such claims are not overstated.

**4.** As in the case at bar, more often than not, the mortgagee's attorney fees and costs sought to be added to the arrearage amount, become the focus of the dispute between the debtor and the mortgage lender's attorneys. The parties are usually able to agree on the number and amount of mortgage payments in arrears. With little or no information about the lender's fees and costs, however, the debtor is not in a position to evaluate or agree to those items.

quently litigated, should be addressed systematically.

■ The Bankruptcy Code dictates the standard by which the arrearage amount is to be determined. Section 1322(e) provides as follows:

Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

11 U.S.C. § 1322(e). This provision directs inquiry not only to the terms of the mortgage and note but also to applicable nonbankruptcy law which, in this case, is Illinois law.

■ Under Illinois law, whether expressly stated in the contract provision or not, a standard of reasonableness will be implied to all requests for reimbursement of attorney fees and expenses assessed by one party to a contract against the other. *Kaiser v. MEPC American Properties, Inc.,* 164 Ill.App.3d 978, 983, 518 N.E.2d 424, 427, 115 Ill.Dec. 899, 902 (Ill.App. 1 Dist.1987). It is well-settled that the party seeking the fees, whether for himself or on behalf of a client, always bears the burden of proof and of production to present sufficient evidence from which the trial court can render a decision as to their reasonableness.[5] *Id; J.B. Esker & Sons, Inc. v. Cle–Pa's Partnership,* 325 Ill. App.3d 276, 757 N.E.2d 1271, 259 Ill.Dec. 136 (Ill.App. 5 Dist.2001). *See, also, Bruner v. Office of Personnel Management,* 996 F.2d 290 (Fed.Cir.1993) (party with burden of proof also bears burden of production requiring production of sufficient evidence to support finding in favor of that party).

■ The allocation of the burden of proof by Illinois courts is identical to that of federal courts. The party seeking recovery of attorney fees bears the burden of proving the fees are reasonable, both in bankruptcy cases, *Matter of Geraci,* 138 F.3d 314 (7th Cir.1998), and nonbankruptcy cases, *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544 (7th Cir.1999). When an oversecured creditor seeks to charge the bankruptcy estate with its attorney fees, costs and expenses, the creditor bears the burden to prove the reasonableness thereof. *In re Green Valley Beer,* 281 B.R. 253 (Bankr.W.D.Pa.2002); *In re Gwyn,* 150 B.R. 150 (Bankr. M.D.N.C.1993): *In re Danise,* 112 B.R. 492 (Bankr.D.Conn.1990).

■ As in most jurisdictions, Illinois courts rely upon the lodestar method to determine the reasonableness of attorney fees.[6] The party claiming fees must present the court with detailed records specifying the services performed, by whom they were performed, the time ex-

---

**5.** In *Raleigh v. Illinois Dept. of Revenue,* 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000), the Supreme Court held that underlying state law determines which party bears the burden of proof when an objection is made to a claim in bankruptcy, reasoning that absent a prevailing federal interest which would require a different result, state interests should not be analyzed differently just because a party is involved in a bankruptcy proceeding. That directive, considered in tandem with Section 1322(e) of the Bankruptcy Code, which provides that the amount necessary to cure a default shall be determined in accordance with applicable nonbankruptcy law, makes it clear that the burden of establishing the reasonableness of fees and costs is to be determined under state law, which, in Illinois, means the burden is on the party claiming the fees and costs.

**6.** The lodestar method begins with the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544 (7th Cir.1999).

pended and the hourly rate charged. *Harris Trust and Sav. Bank v. American Nat. Bank and Trust Co. of Chicago*, 230 Ill. App.3d 591, 595, 594 N.E.2d 1308, 1312, 171 Ill.Dec. 788, 792 (Ill.App. 1 Dist.1992). Once presented with that information, the trial court should consider a variety of other factors, including the skill and standing of the attorneys employed, the nature of the case, the novelty and difficulty of the issues involved, the degree of responsibility required, the usual and customary charge for the same or similar services in the community, and whether there is a reasonable relationship between the fees charged and the litigation. *Id.*

Likewise, the lodestar method, as recently noted by the Supreme Court, is the guiding light of federal fee-shifting jurisprudence. *Gisbrecht v. Barnhart*, 535 U.S. 789, 122 S.Ct. 1817, 1825, 152 L.Ed.2d 996 (2002). In *Gisbrecht*, the Supreme Court applied the lodestar analysis to the question of the reasonableness of a twenty-five percent (25%) contingent fee. Thus, even where the fee arrangement is something other than hourly:

> [T]he court may require the claimant's attorney to submit, not as a basis for satellite litigation, but as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases.

122 S.Ct. at 1828. *See, also, In re Miniscribe Corp.*, 309 F.3d 1234 (10th Cir.2002) (applying the lodestar methodology to a Chapter 7 trustee's request for a fee based on the percentage of funds disbursed). It is also well established that after ascertaining the lodestar figure, courts should also consider eleven (11) other factors which have come to be known as the "*Johnson* factors." *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir.1974), abrogated on other grounds, *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989).

The disclosure procedure used by this Court in this case and other, similar cases, initiated by the filing of an affidavit by the creditor, arose out of what this Court perceived as a sense of mutual frustration between debtors' attorneys and mortgagees' attorneys. Debtors' attorneys are regularly faced with a lack of information as to the attorney fees and costs added to the prepetition arrearage amount by mortgage holders. Without such information, they have no way of determining whether the claimed fees and costs are reasonable or even if the amounts claimed were computed correctly. This inability to ascertain the correct amount of the arrearage delays confirmation and spawns litigation.

The mortgagees' attorneys are faced with regular opposition to their arrearage claims, asserted in general terms, e.g., "the claim is too high." Without knowing exactly what elements of the claim are disputed, and why, those attorneys are faced with the prospect of an evidentiary hearing without knowing what evidence, including what witnesses, will be needed. Because the issue is resolved as a contested matter, not an adversary proceeding, this Court has not used a formal pretrial procedure.[7]

Presented with repeated instances in which the parties failed to produce documentation supporting their position, the Court adopted its disclosure and objection protocol in an effort to facilitate the just, speedy and inexpensive resolution of the

---

7. In a perfect world, the attorneys would voluntarily exchange information and work with each other to stipulate to facts and narrow the issues. They might even negotiate settlement. But, alas, bankruptcy court is not utopia.

recurring issue of the amount of the pre-petition mortgage arrearage.[8] Applying that protocol in this case, at the confirmation hearing held on December 16, 2002, at which LITTON LOAN appeared and objected to the arrearage amount stated in the plan, the Court ordered LITTON LOAN'S attorney to file, within twenty-one (21) days, an affidavit setting forth the terms of the foreclosure fee agreement with LITTON LOAN, detailed time records of the work performed, and attaching copies of receipts for all expenses incurred and alleged to be reimbursable as part of the prepetition arrearage.[9] The Court ordered the DEBTOR, within fourteen (14) days thereafter, to file a response to the affidavit specifying, line item by line item, the amounts that were being disputed with an explanation of the reasons.

Apparently unwilling to disclose its records to the DEBTOR or the Court, LITTON LOAN'S attorneys objected to the disclosure procedure. Because the procedure was intended to benefit LITTON LOAN and its attorneys by facilitating resolution of the issue without an evidentiary hearing, the Court granted the objection, vacated its disclosure order and scheduled an evidentiary hearing. Not satisfied with that procedure either, LITTON LOAN then filed a Motion for a More Definite Statement, taking the position that the DEBTOR, without any information from LITTON LOAN, should be required to state a detailed objection, line item by line item, to the arrearage calculation contained in its proof of claim. The Court denied the motion, in part because of the patent absurdity of LITTON LOAN'S position that the DEBTOR be forced to evaluate the reasonableness of the attorney fees and costs without disclosure by LITTON LOAN'S attorneys of its time records, the terms of its fee agreement, and receipts for expenses incurred.[10]

At the evidentiary hearing, the DEBTOR conceded LITTON LOAN'S position that the prepetition arrearage correctly included eleven (11) mortgage payments totaling $3,533.53. The DEBTOR disputed the other amounts including the previous foreclosure attorney fees and costs of $1,020.00, the property inspections charge of $80.00, the foreclosure costs of $185.00, the foreclosure fees of $1,100.00, the bankruptcy fees of $450.00, the BPO (broker's

---

**8.** Rule 1001 of the Federal Rules of Bankruptcy Procedure provides that the "rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding."

**9.** The same attorneys representing LITTON LOAN in this bankruptcy case also represented LITTON LOAN in the foreclosure action.

**10.** In its Motion for a More Definite Statement, LITTON LOAN relied on Section 502(a) which provides that a proof of claim is "deemed allowed" unless a party in interest objects. LITTON LOAN argued that it was entitled to a specific objection, not merely a general one. The Court rejected this argument on the basis that Section 502(a) refers to an objection, with no qualifications as to the character of the objection. Furthermore, an objection to a proof of claim merely com-mences the litigation. It joins the issue and nothing more. The claims litigation then proceeds as a contested matter pursuant to F.R.B.P. 9014 which permits the entire range of discovery mechanisms under the Federal Rules of Civil Procedure to be utilized to ascertain the specifics of each party's position. Moreover, it is infeasible to expect a debtor to evaluate the reasonableness of attorney fees, using the lodestar method, *before* the creditor's attorney discloses the information that the lodestar method requires. This Court is of the view that LITTON LOAN'S reliance on the "deemed allowed" provision amounts to gamesmanship and is nothing more than an effort to avoid a just, speedy and inexpensive resolution of the real issue, which is, as in most cases, the reasonableness of its attorney fees and expenses.

price opinion) of $100.00 and the previous servicer expense of $586.35.

The DEBTOR was the only witness to testify at the hearing. She testified that she was not aware of any property inspections or appraisals done on her property. She also denied having been served with the foreclosure complaint and summons. The evidence indicated that a neighbor who lives down the street was personally served with the process intended for the DEBTOR.

For its part, LITTON LOAN called no witnesses and presented no evidence. Instead, its attorney advised the Court that he had filed an amended proof of claim just prior to the hearing.[11] The amended claim is for the same total arrearage amount of $8,124.47, but the components of that amount are quite different. The amount formerly referred to as "Escrow Shortage" is subdivided into new entries for "county taxes" of $865.72 and "forced placed insurance" of $203.87. The amended claim eliminates the original claim's entry for previous foreclosure fees and costs of $1,020.00. The amended claim also increases the original claim's entry for foreclosure costs from $185.00 to $1,155.00 and for foreclosure fees from $1,100.00 to $1,150.00. There is no explanation provided for these changes.[12] The amended claim also provides further detail to the

entry for "previous servicer expense" of $586.35, breaking it down by attorney fees of $300.00, property preservation of $11.35 and "statutory" of $275.00. The amended claim also has attached an affidavit by LITTON LOAN'S attorney, stating that LITTON LOAN incurred foreclosure related, reasonable attorney fees of $1,150.00. The costs are itemized into seven (7) components but no receipts are attached for any of the costs. A similar affidavit was not attached to LITTON LOAN'S original claim.[13]

LITTON LOAN'S attorney did not articulate what he thought the effect was of filing an amended proof of claim twenty (20) minutes prior to a scheduled evidentiary hearing. Because he failed to introduce any evidence at the hearing, the Court can only assume that the attorney thought that the amended claim would somehow relieve him of the need to present evidence. If so, he was mistaken. It is clear to this Court that the amended claim must be entirely disregarded.[14]

The purpose of the evidentiary hearing, like any trial, was to permit the parties to present evidence in support of their respective positions, and to attack the evidence presented by their opponents, through cross-examination and rebuttal. An amended proof of claim may not substitute for evidence presented and admitted

---

11. LITTON LOAN'S Amended Proof of Claim was filed twenty-one (21) minutes before the start of the evidentiary hearing.

12. It is a remarkable coincidence that the elements of each claim, filed for the same debt, vary so drastically and yet the total amount of each claim is identical. The Court can only wonder how the original claim could have been so incorrect. However, this very situation is a case in point for why, as a practical matter, the creditor should be required to produce evidence supporting its claim for fees and costs.

13. An affidavit that merely states the legal conclusion that the fees and costs claimed are "reasonable" is meaningless. The purpose of the affidavit is to provide *facts* that support the claim. Like this one, the creditor affidavits that this Court routinely sees are long on legal conclusions and short on facts, which is the whole problem in a nutshell.

14. LITTON LOAN'S last minute filing of a new proof of claim is reminiscent of a carnival shell game and is indicative of an intent to avoid inquiry into its claimed fees and expenses.

at trial. Once an issue is joined and set down for an evidentiary hearing, neither party can unilaterally avoid the necessity of presenting evidence by filing a document in lieu thereof.

A similar ploy was rejected by the District Court in *In re Williams,* 276 B.R. 899 (C.D.Ill.1999). In that Chapter 13 case, the creditor, Nationsbanc, represented by the *same law firm* that now represents LITTON LOAN, failed to object to confirmation of the plan, which was confirmed and provided for a secured claim amount for Nationsbanc of $8,000.00. Thereafter, Nationsbanc filed a proof of claim for a amount larger than provided in the confirmed plan. The trustee filed a motion to have the court determine the effect of Nationsbanc's claim in light of confirmation of the plan for a lesser amount. One (1) day before the scheduled hearing, Nationsbanc filed an amended proof of claim for an amount much greater than its original claim. Nationsbanc failed to appear at the hearing and the court entered an order determining the amount of Nationsbanc's secured claim at $8,000.00 as provided in the confirmed plan. On appeal, Nationsbanc argued that the hearing should have been cancelled when it filed an amended claim. Finding that going forward with the hearing was proper, the court held that Nationsbanc was bound by the confirmation order that determined the amount of its secured claim at $8,000.00. Likewise, in the case at bar, the scheduled evidentiary hearing properly went forward despite LITTON LOAN'S filing of an amended proof of claim just prior to the hearing.

LITTON LOAN had the burden to prove 1) the expenses and attorney fees it incurred as a result of the DEBTOR'S default, and 2) the reasonableness of those expenses and fees. Ordinarily, a failure of proof by the party with the burden is fatal. Where a prepetition mortgage arrearage is at issue that includes attorney fees and expenses, the creditor's failure to present evidence demonstrating that the fees and costs were actually incurred and that they are reasonable, will result in denial of the fees and cost except to the extent conceded by the debtor. *In re Galloway,* 220 B.R. 236, 244 (Bankr. E.D.Pa.1998); *In re McMillan,* 182 B.R. 11, 14–15 (Bankr.E.D.Pa.1995). The application of this sensible rule is universal, equally applicable whether the issue is raised by a mortgagee's objection to confirmation of a Chapter 13 plan, by a debtor's objection to the mortgagee's proof of claim, or by either party's motion to determine secured claim under F.R.B.P. 3012.

Although not raised by LITTON LOAN, the Court is occasionally confronted with the question of the effect of Bankruptcy Rule 3001(f) which provides that "a proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed.R.Bankr. Pro. 3001(f). The purpose of that provision, much like its companion provision in Bankruptcy Rule 3003(b)(1),[15] is simply to permit a creditor who files a proper proof of claim, that is not objected to or otherwise disputed, to have an "allowed claim" without having to present any further evidence to prove up its claim. Once the

---

15. Fed.R.Bankr.Pro. 3003(b)(1) provides:

*(b) Schedule of Liabilities and List of Equity Security Holders*

(1) *Schedule of Liabilities.* The schedule of liabilities filed pursuant to § 521(1) of the Code shall constitute *prima facie evidence of the validity and amount* of the claims of creditors, unless they are scheduled as disputed, contingent, or unliquidated. It shall not be necessary for a creditor or equity security holder to file a proof of claim or interest except as provided in subdivision (c)(2) of this rule. (Emphasis added).

claim is disputed, however, the claimant is obligated to prove up its claim, with the burden allocated as it would be outside of bankruptcy, without regard to Bankruptcy Rule 3001(f). *See Raleigh v. Illinois Dept. of Revenue,* 530 U.S. at 22, 120 S.Ct. at 1956, n. 2.

 Moreover, the evidentiary presumption of Bankruptcy Rule 3001(f) is limited to validity and amount. The reasonableness of fees and costs is a separate issue entirely, the burden of proof for which is squarely on the shoulders of the claimant. In *In re Baker,* 49 B.R. 240 (Bankr.E.D.Pa.1985), the court held that Bankruptcy Rule 3001(f) did not apply to a mortgagee's claim for attorney fees, given the debtor's objection and the mortgagee's failure to establish the need or value of the legal services rendered, a condition precedent to the granting of the claim. Since the burden of proof includes the burden of production, a proof of claim that fails to attach documents in support of claimed fees and costs fails to meet the burden of production. This does not necessarily render the claim improper or defective. It means only that the claimant, not having made its prima facie case with respect to fees and costs, is not entitled to an evidentiary presumption in that regard at a contested hearing.

In addition, the issue of the amount of the mortgage arrearage is usually raised, as it was here, via an objection to confirmation of the Chapter 13 plan. The lender may or may not have its proof of claim on file. Bankruptcy Rule 3001(f) has no ap-plication to the confirmation process. Neither would it apply to the third procedural avenue by which the issue may be raised, a motion to determine the claim pursuant to Bankruptcy Rule 3012. The issue should be resolved and the burden of proof applied consistently regardless of the procedure by which the issue is raised.[16] One bankruptcy court has recently resolved this issue by requiring a mortgagee whose fees and costs are disputed, to file a detailed fee application conforming to Bankruptcy Rule 2016 as a condition to allow-ance of those fees and costs. *In re Plant,* 288 B.R. 635 (Bankr.D.Mass.2003).

During the trial, in response to the Court's surprise at LITTON LOAN'S lack of evidence, LITTON LOAN'S attorney asked the Court for direction as to what evidence was expected. The Court advised the attorney that such direction could only be given in the Court's decision, not during the course of trial.

 The starting point is this Court's opinion in *In re McMullen,* 273 B.R. 558 (Bankr.C.D.Ill.2001), involving the same issue of the reasonableness of attorney fees and costs included by a creditor in a claim for a prepetition mortgage arrearage.[17] As set forth therein, the following evidence must be made a part of the record in order for the mortgagee to satisfy its burden of production:

1. The terms of the attorney fee contract between the mortgagee and its attorney. The Court must be able to determine how much the mort-

---

16. Neither is there any support in the Bankruptcy Code or Rules for the proposition that the claims litigation process overrides the confirmation process. Given that the determination of the proper amount of a mortgagee's prepetition arrearage is a condition of confirmation, the issue falls squarely within the confirmation process and the rules that apply thereto, which do not include any artifi-cial evidentiary presumptions, in favor of either the debtor or the creditor.

17. LITTON LOAN'S attorney's perplexity over the evidence required is astonishing since the same law firm that represents LITTON LOAN here, represented the mortgagee in *McMullen.*

gagee is actually being charged for the attorney's services and on what basis, e.g., hourly, flat rate, etc.[18]

2. Time records showing the amount of time expended by each attorney or paralegal, a description of each service performed, and the applicable hourly rate charged, or the customary hourly rate charged by that attorney or paralegal for work performed on an hourly basis.

3. If a judgment of foreclosure was entered by the state court, a complete file-stamped copy of the judgment must be attached so that the bankruptcy court may take into account any award of fees or costs contained in the judgment.

4. Copies of invoices or receipts for all expenses incurred. If reimbursement of charges for property inspections or appraisals is sought, some additional evidence demonstrating the necessity for these activities must be submitted. If a commitment for title insurance was purchased, a copy of the commitment and the invoice should be attached.[19]

Once the information is provided, the debtor's attorney must then advance a specific objection to each separate item in dispute.

■ Returning to the evidentiary hearing in the case at bar, had LITTON LOAN'S attorney been prepared to do so, he could have at least met his burden of production with no other witnesses. An attorney may testify as to the fees and costs charged to a client by the attorney or his firm. This would not have relieved the attorney from the necessity of presenting the documentary evidence referred to above. But had he been prepared to do so, the attorney could have presented the documents at the hearing where he was available to be cross-examined by opposing counsel.

■ Even if the attorney was not prepared to testify at the hearing, if the documents had been filed, the Court would at least have had a basis to make a determination of the reasonableness of fees and costs and to make an award of fees and costs even in the absence of testimony. That is exactly what this Court did in *McMullen. See, also, Coastal Fuels Marketing, Inc. v. Florida Exp. Shipping Co., Inc.,* 207 F.3d 1247, 1253 (11th Cir.2000) (where billing records had previously been submitted, court had basis to award attorney fees, even though law firm failed to send representative to evidentiary hearing on fees). But without the necessary documents in the record, the Court cannot determine what fees and costs were actually charged to LITTON LOAN, much less whether they were reasonable. Because LITTON LOAN failed to produce any evidence in support of its claim for attorney

---

18. In light of the recent proliferation of various hybrid attorney fee arrangements, other than hourly, between large national mortgage companies or servicers and their lawyers, both for foreclosure actions and bankruptcy cases, it is imperative that the applicable terms be set forth accurately and completely whenever attorney fees are part of a claim for a mortgage arrearage. *See, In re 1095 Commonwealth Ave. Corp.,* 204 B.R. 284 (Bankr. D.Mass.1997), *aff'd as modified,* 236 B.R. 530 (D.Mass.1999) (sanctions imposed against law firm that misrepresented terms of fee agreement with creditor-client in attempt to recov-

er fees greater than actually charged to client).

19. Debtors regularly challenge the reasonableness of property inspection and appraisal charges, yet the mortgagees never produce evidence supporting these charges. The Court also regularly sees unsupported charges for "alias summons" for unusually high amounts. So, too, the claimed title insurance expenses are often much higher than customary charges by title companies in Central Illinois.

fees, costs and other charges, and since the DEBTOR disputed and did not concede any of those items, the following amounts are disallowed:

| | |
|---|---|
| Prev. FC Atty Fees & Costs | $1,020.00 |
| Property Inspections | 80.00 |
| Foreclosure Costs | 185.00 |
| Foreclosure Fees | 1,100.00 |
| Bankruptcy Fees | 450.00 |
| BPO | 100.00 |
| Previous Servicer Expense | 586.00 |
| Escrow Shortage | 1,069.59 |

The allowed amount of LITTON LOAN'S prepetition mortgage arrearage is adjudicated and determined to be $3,533.53, comprised of eleven (11) mortgage payments at $321.23 per payment, as conceded by the DEBTOR. This determination now constitutes the law of the case on this issue and Claim # 11, LITTON LOAN'S amended proof of claim, will be denied for that reason.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.