OPINION OF THE COURT

McKEE, Circuit Judge.
Harry and Marlene Sponaugle brought various federal and state law claims against First Union Mortgage Corporation in connection -with First Union’s assessment of a $915.00 charge for attorneys’ fees and costs. The Sponaugles claim that First Union’s efforts to collect these charges outside of the bankruptcy process violated the provisions of the Bankruptcy Code as well as various state and federal debt collection laws, and that they also breached the contract between the Spo-naugles and First Union. The district court granted summary judgment in favor of First Union on all counts, and the Spo-naugles now appeal. For the reasons that follow, we will affirm.
I.
Our review of the district court’s order granting summary judgment is plenary. See Jacobs Constr., Inc. v. NPS Energy Sen., Inc., 264 F.3d 365, 369 (3d Cir.2001). Accordingly, we view the evidence in the light most favorable to the non-moving party, and determine if there is a genuine issue of material fact. See Waldorf v. Shuta, 896 F.2d 723, 728 (3d Cir.1990). We affirm the district court’s grant of summary judgment in favor of First Union if the evidence, so viewed, establishes that First Union is entitled to judgment as a matter of law.
II.
Inasmuch as we write only for the parties, we need not set forth the factual background of this dispute except insofar as may be helpful to our brief discussion. We will begin our analysis by determining *716 if the district court erred in concluding that the Sponaugles failed to establish actual injury, and therefore lack standing. The Sponaugles claim that their mortgage account with First Union has been unlawfully assessed $915.00 and that First Union has already initiated collection efforts, thus establishing an injury in fact.
Standing is fundamentally a jurisdictional question. See AT&T Communications of New Jersey, Inc. v. Verizon New Jersey, Inc., 270 F.3d 162, 170 (3d Cir.2001). In order to establish standing under Article III, a plaintiff must first demonstrate an injury fact, which is: a) concrete and particularized; and b) actual or imminent, not conjectural or hypothetical. Second, a plaintiff must show a causal connection between the injury and the defendant’s conduct. Third, the injury must be one that a court can redress. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
Here, the record shows that First Union’s attempts to collect the disputed charge is limited to two telephone calls and a subsequent letter requesting payment. However, since that letter was sent on December 4, 2000, First Union has not made any attempt to collect this fee. Moreover, First Union represents without contradiction that it sold the servicing rights to the Sponaugles’ mortgage to Alliance Mortgage Company, and thus “has no interest in or connection to their loan ... [ ]”. Thus, First Union claims that “a future collection effort by First Union is improbable.” Br. of Appellee at 13. It is undisputed that the Sponaugles have never paid this fee nor any portion of it. Inasmuch as First Union has not taken any further efforts to collect, and apparently no longer has any right to undertake any such efforts, we agree that the Sponaugles can not demonstrate that any cognizable injury resulted from First Union’s conduct. Any such injury is, at best, hypothetical and conjectural. Inasmuch as that is not sufficient to support standing, we conclude that the district court did not err in finding that the Sponaugles lack standing.
Although lack of standing is dispositive, see AT&T Communications, supra, we will nonetheless address the Sponaugles’ remaining allegations as we conclude that they also lack merit.
The availability of interest, costs, and fees on a secured creditor’s claim is governed by 11 U.S.C. § 506(b), which provides:
To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.
11 U.S.C. § 506(b) (1999). The Supreme Court has held that § 506(b) “applies only from the date of filing [of the bankruptcy petition] through the confirmation date [of the Plan].” Rake v. Wade, 508 U.S. 464, 468, 113 S.Ct. 2187, 124 L.Ed.2d 424; see also Telfair v. First Union, 216 F.3d 1333, 1338 (11th Cir.2000). Thus, fees arising post-confirmation are not governed by § 506(b). Rather, they are controlled by the terms of the mortgage document, itself.[1] See Telfair, 216 F.3d at 1339.
*717 Here, the Sponaugles filed their petition for bankruptcy on April 1, 1998, and the bankruptcy court confirmed the Plan on June 1, 1998. After confirmation, the Spo-naugles made payments toward the arrear-age according to the terms of the Plan, but failed to keep up regular payments on the mortgage. Five months after confirmation, on November 4, 1998, First Union filed a motion to lift the automatic stay so it could proceed to foreclose on the property. It is undisputed that in preparing and filing the motion, First Union incurred $915.00 in attorneys fees. Thus, it is clear that First Union incurred the $915.00 charge after confirmation of the Plan, and therefore § 506(b) is inapplicable. Rather, the debt is governed by the terms of the mortgage document, itself. The Sponau-gles’ breach of contract claim alleges a breach of the terms and conditions of that mortgage.
The mortgage document between the Sponaugles and First Union states in part:
Protection of Lender’s Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender’s rights in the Property (such as a proceeding in bankruptcy ...), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender’s rights in the Property.
Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument.
Br. of Appellee at 5 (emphasis added). The contract between the parties thus allowed First Union to collect the attorneys’ fees that have been assessed. Accordingly, First Union clearly did not breach that mortgage contract when it assessed those fees. The Sponaugles also argue that First Union violated the federal Fair Debt Collection Practices Act (“FDCPA”). Under the FDCPA, “a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.” 15 U.S.C. § 1692f (1999). The conduct prohibited under the FDCPA includes:
(1) The collection of any amount ... unless such amount is expressly authorized by the agreement creating the debt or permitted by law.
15 U.S.C. § 1692f(l).
The Sponaugles contend that First Union violated the FDCPA by assessing the $915.00 charge without first seeking approval of the bankruptcy court under 11 U.S.C. § 506(b). However, as discussed above, First Union was not obligated to first obtain court approval. Moreover, as also noted earlier, the charge is authorized by the mortgage document itself. Therefore, the district court properly found that First Union did not violate the FDCPA.[2]
*718 The Sponaugles also claim that First Union is hable under Pennsylvania’s Unfair Trade Practices and Consumer Protection Law (“UTPCPL”). They maintain that First Union misrepresented in the Reinstatement Agreement that they only owed $50.00 in attorneys’ fees and costs. A plaintiff must prove the elements of common law fraud to prevail under the UTPCPL. These elements are: 1) a material misrepresentation of an existing fact; 2) scienter; 3) justifiable reliance on the misrepresentation; and 4) damages. See Booze v. Allstate Ins. Co., 750 A.2d 877, 880 (Pa.Super.2000); Hammer v. Nikol, 659 A.2d 617, 620 (Pa.Comwlth.1995).
First Union filed a § 91 Notice with the Pennsylvania Housing Finance Administration (“PHFA”) so that the Sponaugles could obtain a PHFA loan to bring their mortgage payments current. In the Reinstatement Agreement, First Union listed the amount in arrears, and included an additional $50.00 in attorneys’ fees — -the maximum recoverable amount for attorneys’ fees from the PHFA. The PHFA paid the $50.00 to First Union, and First Union in return credited this amount to the Sponaugles’ outstanding legal fees, leaving a $915.00 balance.
The Sponaugles contend that they were “misled” into believing that $50.00 was the extent of the attorneys’ fees. However, they provide no evidence of deceptive or misleading statements or actions either in the Reinstatement Agreement or elsewhere. The Sponaugles do not contest that $50.00 is the maximum amount in attorneys’ fees from the PHFA. They also do not contest that First Union was authorized under the mortgage agreement to incur attorneys’ fees to protect its interest in the property. Therefore, the Sponau-gles cannot show that First Union made any material misrepresentations, nor can they establish injury. Accordingly, they cannot establish the fraud necessary to prevail under the UTPCPL.
For all the reasons set forth herein, we will affirm the district court’s grant of summary judgment in favor of First Union.[3]

. The plain language of 11 U.S.C. § 1322 is further evidence that the mortgage document governs the payment of attorneys’ fees when the fees arise post-confirmation. Section 1322 states that a debtor is allowed to alter his/her contractual obligations in a mortgage document with a homestead lender in a Chapter 13 bankruptcy only to "cure” a pre-petition default. See 11 U.S.C. §§ 1322(b)(2) and (b)(5)(1999).

. We will assume arguendo that a mortgage servicing company like First Union is a "debt collector” for the purposes of the FDCPA. However, under the statute, the term "debt collector” does not include:
[A]ny person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (iii) concerns a debt which was not in default at the time it was obtained by such person!.]
15 U.S.C. § 1692a(6)(F)(1999). The Sponau-gles were not in default of the $915.00 debt when First Union added the charge. Indeed, the Sponaugles are not in default now as First Union has not pursued collection of the charge since December 4, 2000. Therefore it would appear from the statute that First Union may not be a “debt collector,” and that the FDCPA consequently does not apply. See e.g., Perry v. Stewart Title Co., 756 F.2d 1197 (5th Cir.1985)(mortgage servicing company was not a "debt collector” for purposes of the FDCPA); Bailey v. Security Mat’l Servicing Corp., 154 F.3d 384, 388 (7th Cir.l998)(mort- *718 gage servicing company seeking to collect on a debt not in default is not a "debt collector” for that particular debt, even though debtor was in default on a different debt with the same servicing company).

. Given our holding here, we will also affirm the district court's grant of summary judgment against the Sponaugles concerning their request for injunction relief.