**In re Joel R. McGUIER and Kelley Ishler McGuier, Debtors.**

**Washington Federal Savings Bank, Movant,**

v.

**Joel R. McGuier and Kelley Ishler McGuier, Respondents.**

**No. 02–27863–TPA.**

United States Bankruptcy Court, W.D. Pennsylvania.

July 25, 2006.

154

Harry A. Stiffler, Jr., Esq. Goldbfarb, Posner, Beck, DeHaven & Drewitz, Washington, PA, for Movant.

Clayton S. Morrow, Esq., Morrow & Morrow, PC, Pittsburgh, PA, for Respondents/Debtors.

### *MEMORANDUM OPINION*

THOMAS P. AGRESTI, Bankruptcy Judge.

The matter before the Court is Washington Federal Savings Bank's *Motion for Approval of Charges and Application of Payments Under Loan Agreement, Including Counsel Fees, Nunc Pro Tunc, Under 11 U.S.C. § 506 and 11 U.S.C. § 1322(e), or for Amendment of Proof of Claim and/or Reconsideration of Claim Under F.R.B.P. 3008* ("Motion"). For the reasons expressed below, the motion is granted. As of December 31, 2005, Wash-

ington Federal Savings Bank's secured claim is allowed in the amount of $24,362.86, plus interest on the principal amount due and $2,212.50 in additional attorney fees.

### FACTS

Joel R. McGuier and Kelley Ishler McGuier, his wife, ("Debtors") filed their voluntary Chapter 13 proceeding on July 24, 2002. The filing was their fourth petition in as many years. Washington Federal Savings Bank ("Washington Federal") holds a first mortgage on Debtors' nonresidential property located at 70 East Chestnut Street, Washington, PA. Previously, on September 8, 1989, Washington Federal funded the Debtors' mortgage which is the subject of the present action ("Mortgage") in the principal amount of $90,000. On November 15, 2002, Washington Federal filed an amended proof of claim ("Proof of Claim") in the amount of $110,547.02 for prepetition amounts due on the Mortgage. The amount due Washington Federal as listed on the Proof of Claim included an arrearage claim of $28,558.42 which had been paid in full prior to this dispute arising. On March 5, 2003, the Debtors amended Chapter 13 Plan ("Plan") was confirmed. After Plan confirmation, little apparent legal activity took place in the bankruptcy case until August 15, 2005 when Washington Federal filed the subject motion. Washington Federal does not dispute that Debtors were current throughout the bankruptcy proceeding on their arrearage payments.

Under this confirmed Plan, the Washington Federal obligation was to be paid off at some point after the Debtors received their discharge in bankruptcy. The subject dispute apparently arose when the Debtors sought an early payoff figure from Washington Federal prior to discharge and closure of the case. The Debtors disagreed with the figure provided. According to the Debtors' "Brief in Support" filed at Document No. 60, Washington Federal stated in a letter dated September 15, 2005 that the payoff amount was $87,643. The Debtors believed that the amount should have been $66,052.59. The Debtors subsequently made payment to Washington Federal in the amount of $66,052.29 from proceeds received from the sale of other property.[1] The $66,052.29 payment was credited to the Debtors' loan on November 4, 2005. Washington Federal then filed the subject motion seeking court approval of the application of the Debtors' payments to reduction of the loan as well as for its attorney fees accrued throughout this matter. At the time of the evidentiary hearing on the matters at issue Washington Federal agreed that it was not seeking any additional claim other than postpetition interest, attorney fees and costs. The Parties do not dispute that Washington Federal enjoys the status of an oversecured creditor at all times during the matters at issue. Specifically, Washington Federal seeks approval of its postconfirmation claim, which includes principal, interest and attorney fees as of February 10, 2006 in the amount of $35,699.21.[2] The Debtors contend the proper amount to be $10,395.83 plus reasonable fees and costs

1. Debtors did not seek court approval for that sale. Counsel for Debtors indicated that he understood from the Chapter 13 Trustee that court approval was not necessary since Debtors were paying 100% to their unsecured creditors. The letter was not submitted as an exhibit at trial.

2. See *Movant's Post Evidentiary Hearing Memorandum Statement* at Document No. 82, Paragraph VIII.

as to be determined by the Court.[3]

## JURISDICTION

This matter comes to the Court in a somewhat peculiar posture. Washington Federal requests a postconfirmation determination of the proper application of payments made to it by the Chapter 13 Trustee via the Plan and for payment of attorney fees and costs incurred by it in protecting its claim. Matters concerning loan payment application issues typically arise in the preconfirmation stage or in the form of an objection to a lender's prepetition claim. During the administration of this case, the Debtors did not object to the November 15, 2002 Proof of Claim filed by Washington Federal. The Plan identified the Washington Federal debt as a long term continuing debt to be "cured and reinstated" during the life of the Plan with the Mortgage lien retained. Based on the Plan terms, Washington Federal's Proof of Claim was to "govern."

The Plan further specified that the $28,558.42 Washington Federal arrearage claim was to be paid over the 60 month term of the Plan. On March 5, 2003, the time of Plan confirmation, the language of the confirmed Plan makes apparent the Debtors did not anticipate a satisfaction of the Washington Federal obligation prior to Plan completion. The Debtors clearly intended for the obligation to remain outstanding beyond the Debtors' discharge.

The Parties agree that in addition to determining the appropriate allocation of Plan payments towards reduction of Washington Federal's claim, only postpetition, additional claims are currently at issue. The Parties admit the Debtors are current as to their Plan payments to date. Nor do the Debtors dispute that some reasonable attorney fees are appropriate and should be paid Washington Federal as provided for by the mortgage. Only the amount of those fees is at issue.

Usually payoff issues concerning postconfirmation creditor claims, including lender fees and costs charged during the life of a mortgage, arise post-discharge. If bankruptcy court jurisdiction exists, typically it is based on debtor-driven actions alleging violations of the automatic stay provisions, 11 U.S.C. § 365(a), or the discharge injunction, 11 U.S.C. §§ 524(a) and 1382(a).[4] Alleged violations of these provisions of the Bankruptcy Code usually are sufficient to create a jurisdictional basis for bankruptcy court adjudication since the claim is a core proceeding "arising under" the provisions of the Bankruptcy Code. 28 U.S.C. § 157(b)(1).

Neither Party has questioned the Court's jurisdiction to resolve the current dispute. By filing its Motion, Washington Federal has requested the Court to resolve the matters raised claiming entitlement to such a determination pursuant to 11 U.S.C. § 506(b) and 11 U.S.C. § 1322(e). Washington Federal alternatively sought to amend its Proof of Claim to include ac-

---

3. Although, in response to the Court's inquiry at the end of the Debtors' case, counsel and Debtors' expert claimed $11,918.58 was due consistent with the amount set forth in Ex. A–35(E)(4), throughout the expert's testimony the figure of $10,395.83 was used by the expert. *Audio Transcript of Proceedings* dated Jan. 23, 2006, 12:43:59, 12:50:28, 12:51:44, 1:07:25, 1:37:20, 1:40:56. Since the close of testimony, apparently the Debtors believe the appropriate payoff now to be $8,265.22. See

Debtors' *Post Evidentiary Hearing Memorandum*, Document No. 83.

4. Since the within matter was filed prior to October 17, 2005, unless otherwise indicated, all statutory references are to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., in effect prior to the enactment of the *Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.*

crued postpetition charges. The Debtors consent to the Court's review apparently believing a more expeditious resolution of the matter here, than in state court, or possibly that this Court may be more sensitive to the issues raised than may a state court. Regardless of the respective impetus behind proceeding in this Court, the mere consent of the Parties does not confer subject matter jurisdiction.

Washington Federal's Motion seeks a determination by this Court as to the appropriate application of payments made to it by the Debtors towards the arrearages as identified in its Proof of Claim. Washington Federal's Proof of Claim was allowed, without objection, by the terms of the March 5, 2003 Confirmation Order. A legitimate dispute has arisen between the Parties as to the application of the Plan payments during the period of the Plan in which Washington Federal received payments on its obligation culminating in the Debtors' early payoff request so that they could satisfy the obligation. Of importance to the Court's decision in determining jurisdiction under these circumstances, is that, although this request arose post-confirmation, it occurred prior to the discharge of the Debtors and closure of the case.

■ Pursuant to *28 U.S.C. § 157(b)(1)*, bankruptcy courts are granted authority to hear and determine all cases and "core proceedings" arising under Title 11 and may enter appropriate orders and judgments in those proceedings. A "core proceeding" under *Section 157* is one invoking a "substantive right provided by Title 11" or one that "by its nature, could arise only in the context of a bankruptcy case." *In re Resorts International, Inc.*, 372 F.3d 154 (3d Cir.2004) (citations omitted). A non-exhaustive list of examples of "core proceedings" include matters concerning the administration of the estate as well as proceedings affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor relationship. *28 U.S.C. §§ 157(b)(2)(A), (O)*.

■ Here, by its Motion, Washington Federal initially requests this Court, in alternate ways, to review the Plan payment history and determine the proper "credit" of those payments towards reduction of its claim and decide what, if anything, remains due and owing on payment of its prepetition claim which "governs" the confirmed Plan in this case. It is undisputed that Washington Federal is an oversecured creditor and by virtue of that position is entitled to enforce its rights under *11 U.S.C. § 506(b)* with respect to the accrual of postpetition fees, interest, costs, and attorney fees up to and including the time of confirmation. *Rake v. Wade*, 508 U.S. 464, 468, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993); *See also Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1338 (11th Cir.2000), *cert. denied*, 531 U.S. 1073, 121 S.Ct. 765, 148 L.Ed.2d 666 (2001). Washington Federal also makes claim for expenses incurred post confirmation and prior to discharge allegedly authorized pursuant to *11 U.S.C. § 1322(e)*, if not alternatively, for payment of contract interest, attorney fees and costs. The Debtors admit the bank is entitled to "some fees and costs" under the Mortgage.

In light of the allegations in the Motion coupled with the relief requested, in addition to requesting a determination of the proper application of Plan payments, which raise matters involving the "administration of the estate" and affecting the "debtor-creditor relationship," Washington Federal's Motion can also be likened to a motion seeking relief from stay to collect monies allegedly incurred and due on its indebtedness but not paid prior to discharge. *Compare 28 U.S.C. § 157(b)(2)(G)*. For all these reasons, the bank's Motion falls

under the category of a "core proceeding." Therefore, subject matter jurisdiction exists in this Court to resolve the pending dispute.

## DISCUSSION

■■■ The movant bears the burden of proof in seeking payment of an administrative claim. *In re Worldwide Direct, Inc.*, 334 B.R. 112, 120 (Bankr.D.Del.2005); *In re Philadelphia Mortgage Trust*, 117 B.R. 820, 827 (Bankr.E.D.Pa.1990); *see also In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 533 (3d Cir.1999) (holding that the burden of proof is on the claimant); *In re Moore*, 109 B.R. 777, 780 (Bankr. E.D.Tenn.1989) (the burden to demonstrate that the claim is an administrative claim is upon the movant); Russell, *Bankruptcy Evidence Manual*, 2006 Ed., § 301.54A. Moreover, the movant must prove it is entitled to an administrative expense award by a preponderance of the evidence. *In re Worldwide Direct, Inc.*, 334 B.R. at 120; *In re TransAmerican Natural Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir.1992).

■■■ In order to recover attorney fees and other expenses under *Section 506(b)*, a creditor bears the burden of proving entitlement by establishing: (1) that it is oversecured in excess of the fees requested; (2) that the fees are reasonable; and (3) that the agreement giving rise to the claim provides for attorney fees. *11 U.S.C. § 506(b); In re Schriock Construction, Inc.*, 104 F.3d 200, 201 (8th Cir.1997); *In re Green Valley Beer*, 281 B.R. 253, 255 (Bankr.W.D.Pa.2002); *In re Oliver*, 183 B.R. 87, 92 (Bankr.W.D.Pa.1995). Fur-

thermore, the burden of proof is on the party seeking allowance of attorney fees. That party is required to show "reasonableness" by a preponderance of the evidence, and among other things, by providing the court with detailed descriptions of the services rendered, supporting documentation, as well as any appropriate, other evidence necessary for the Court to make a favorable determination on the application for payment. *In re Foertsch*, 167 B.R. 555, 562 (Bankr.D.N.D.1994); 5 *Collier's on Bankruptcy*, ¶ 506.04[3][a][ii] (Lawrence P. King ed., 2006). The creditor must also show by a preponderance of the evidence that the fees were necessary to protect the creditor's interests. *In re Toy King Distributors, Inc.*, 256 B.R. 1, 187 (Bankr.M.D.Fla.2000); *Matter of T–H New Orleans Ltd. Partnership*, 116 F.3d 790, 798 (5th Cir.1997); *In re Grabill Corp.*, 121 B.R. 983, 992 (Bankr.N.D.Ill. 1990).

■■■ While *11 U.S.C. § 506(b)* allows for payment of fees and other expenses on an oversecured creditor's claim, *Section 506(b)* only applies from the date of filing of the bankruptcy petition through the confirmation date of the plan. *Rake*, 508 U.S. at 468, 113 S.Ct. 2187.[5] Consequently, fees and other costs that arise postconfirmation and prior to discharge are not governed by *Section 506(b)*. Rather, they are controlled by the terms of the underlying contract. *See Telfair*, 216 F.3d at 1339.

### Application of Plan Payments

■■■ In support of the claim that it properly credited to the Debtors' account all

---

5. Although *Rake* was overruled by legislative act on other grounds, the new statute, *11 U.S.C. § 1332(e)*, did not affect contracts entered into before October 22, 1994. *See Telfair v. First Union Mortgage Corporation*, 216 F.3d 1333 (11th Cir.2000); *In re Smith*, 85 F.3d 1555 (11th Cir.1996). Because the

Mortgage in the instant matter was entered into by the parties on September 8, 1989, the enactment of *Section 1322(e)* does not alter the Court's disposition of this case. *In re Gordon–Brown*, 340 B.R. 751, 757 (Bankr. E.D.Pa.2006)

postpetition payments received by it, Washington Federal presented Mr. Gary Sladick ("Sladick"), Collections Manager for the bank. Sladick testified that the computer system used by the bank to apply Debtors' arrearage payments is the same system as that used to record all other non-bankruptcy payments the bank receives on a day-to-day basis. The system does not allow for differentiation between types of borrowers and calculates payments received regardless of whether the mortgagor is in bankruptcy.[6]

Through Sladick, Washington Federal contended that as of December 31, 2005, the payoff on its loan was $28,937.60. Ex. CR–34. This figure consisted of $22,618.51 in principal, $429,75 in intérest, $37.19 in late charges for the December payment that was not made, and for "other fees" totaling $7,3 81.93. In support of calculating the principal amount, Washington Federal presented summaries, calculated on a chronological basis beginning with the specific amounts set forth on the Proof of Claim (CR–7), identifying: the date and amount of each postpetition payment made to principal (Ex. CR–10); how the bank credited each payment to principal (Ex. 11); a full accounting of the manner in which escrow taxes and insurance were handled on a monthly basis (Ex. CR–12); out-of-pocket advances made by the bank further justified by reference to additional "spreadsheet" exhibits (Ex. 13); on-going postpetition interest accruals (Ex. 14); an explanation of how the "unapplied funds" account (i.e., funds held until a sufficient amount is generated to pay a loan item) was credited (Ex. 15); and, the tracking of all the Debtors' payment distributions throughout the relevant time period (Ex. CR–17). The summaries, in large part, continued through December 31, 2005 tracking the loan payment histories for the same period, which "histories," without a narrative explanation by one familiar with the process, were somewhat more difficult to comprehend and follow.

The Sladick testimony was complicated by the fact that the bank chose to treat the Plan payments it received from the Chapter 13 Trustee without regard to the bankruptcy filing. Rather than allocating the Chapter 13 payments between the then-current monthly postpetition loan payment and prepetition arrearages, the payments were first applied to accumulating interest, principal and the escrow deficiency. Thereafter, the postpetition Chapter 13 payments were credited toward principal and interest on a "going forward" basis. Ex. CR–17. On November 4, 2005, when the Debtors sought to finally "pay-off" the loan by making the $66,052.59 payment, the bank applied the payment as follows: $41,895.26 to principal; $7,907.09 to prepetition escrow shortages, and; $9,867.38 to prepetition interest. The remaining $6,382.86, coupled with the $1,667.90 balance accumulated in the "unapplied funds" account was used to reimburse the bank $8,050.76 in accumulated and previously paid, but not reimbursed, pre– and postpetition attorney fees and costs. Ex. 13. Based upon the Sladick testimony, as accompanied by the detailed exhibits identifying all the various transfers, the bank justified the "accounting portion" of its claim in that, as of December 31, 2005, the principal balance due and owing Washington Federal totaled $22,618.51 (Ex. 11) and the total amount due was $28,937.60. Ex. CR–34.

In response to Washington Federal's explanation of how its claim was determined,

---

**6.** Debtors attempted to emphasize the importance of this aspect of the bank's accounting methods in disputing Washington Federal's justification for its claim but did not show or suggest a different outcome if some other system was utilized.

the Debtors presented Thomas G. Milinovich, CPA ("Milinovich") who addressed each year of the loan since the filing of the case. Milinovich prepared a report dated January 9, 2006 which was relied extensively upon by the Debtors in their attempt to discredit Washington Federal's claim for amounts due. Milinovich made no attempt to directly attack and discredit the Sladick testimony, the foundation of which was the straightforward, easily comprehensible Exhibits 10 through 17. Rather, Milinovich's testimony, and his report, primarily focused on: (1) the $66,052.59 November 2005 payment as compared to the line item claims set forth on the Proof of Claim; and in particular, (2) the handling of the alleged outstanding legal fees which Washington Federal claimed remained due. Ex A–35.[7]

On October 31, 2005, the Debtors made a direct payment of $66,052.59 to Washington Federal from the proceeds of a sale of nonresidential property which was credited by the bank to the Debtors' account on November 4, 2005. Washington Federal broke the payment down and applied various amounts to escrow, principal, interest and other fees. Milinovich contended that $7,547.51 of the payoff amount was applied to interest when it actually "appeared" to represent part of the arrearage claim identified in the Proof of Claim. The Debtors claimed this amount had already been included in the arrearage payments previously made by Debtors during the pendency of the Plan. It was Milinovich's opinion that Washington Federal had been paid twice for that amount. Ex. A–35(E)(14)(b). He further asserted that certain payments that were treated as fee payments ("other fee") totaling $8,050.76 also appeared to have been paid twice. Ex. A–35 (E)(14)(b).[8] Milinovich testified that the $597.90 and the $1500 fee payments forming part of the $8,050.76 figure comprised the "$2,097.90" figure appearing in the Proof of Claim, and therefore, part of the previously paid arrearage claim.

As a result of the alleged misapplied credits, Milinovich further testified that based on Debtors' payments outside of the Plan and as received from the Chapter 13

---

7. The payments made in 2003 in accordance with Debtors' Chapter 13 Plan to the Chapter 13 Trustee were credited by Washington Federal on the dates that the Chapter 13 Trustee disbursed the funds to Washington Federal. Milinovich argued that the payments should have been credited on the dates that the Chapter 13 Trustee received the funds from the Debtors which, in some instances, was several months prior thereto. Milinovich contended that had the payments been applied in this manner the interest amount would have been reduced since principal would have been reduced. However, Milinovich could not articulate or provide the Court with any specific amount as to how Washington Federal's December 31, 2005 payoff figure would have been impacted had the payments been credited to the loan as he suggested. He referred to it as a "minor item." Therefore, his testimony in this regard was not considered by the Court. Furthermore, Milinovich did not take any issue with respect to payments made by the Debtors during 2004. Of the accounting matters he did question, he testified that they were *de minimis* and not substantial enough to contest.

8. Regardless of the Sladick hearing testimony, it is clear from the evidence that the $8,050.76 amount was comprised of $597.90, $1500, $2,807.86, $550 and $2,595 forming the basis of Washington Federal's "Out of Pocket Expenses" shown on Exhibit 13 and representing fees allegedly incurred from 05/18/01 through 09/19/05. As previously noted, Washington Federal's claim is that, although these fees had previously been paid to its Counsel, the bank was not reimbursed for these fees until the November 2005 "payoff" was received, at which time the $7,547.51 from the payoff when coupled with the $1,667.90 of unapplied funds (Ex. 15) was used to finally reimburse the bank for attorney fees expended by it through September 19, 2005. Ex. 13.

Trustee, the payoff amount should have only been $10,395.83 subject to additional attorney fees and costs as allowed by the Court. Ex A–35(E)(4). Milinovich believed that $7,547.51 of the total $66,052.59 payoff, which Sladick testified on cross-examination had been applied by the bank on November 4, 2005 to "interest" was actually part of the bank's arrearage claim and included in the $28,558.42 prepetition amount itemized on the Proof of Claim. The clear implication of the Milinovich testimony in this regard was that Washington Federal did not properly credit the Debtors but had charged twice for the same costs and expenses. Therefore, he concluded that the amounts of $2,097.90 and $7,547.51 should be reduced from the payoff amount.

On cross examination, the Milinovich opinion did not withstand scrutiny. Milinovich ultimately acknowledged that of the payments received from the Chapter 13 Trustee, Washington Federal applied $10,992.52 to principal. Ex. A–35(E)(4). Under his own calculations, Miliniovich testified he believed the credit to principal from those payments was much less, i.e., $7,373.79. Thus, based upon a review of the calculations offered by the bank, to which Milinovich now agreed, Washington Federal credited $3,618.73 more toward principal than indicated by Debtors' own expert. Furthermore, the documents submitted by Milinovich further refuted the Debtors' own arguments in this regard. On August 1, 2005, according to Washington Federal's calculation, the loan balance was $64,513.77. Ex. 11. Milinovich's calculations for the balance as of that same date was $68,012.73. Ex A–35(E)(5)(b). Again, the evidence clearly supported Washington Federal's application of loan payments which resulted in a lower balance of $3,498.96. Milinovich agreed to this finding.

On direct, Milinovich opined that other amounts also appeared to be debited twice further impacting the amount applied to principal. As previously noted, Milinovich contended that the $2,097.90, listed as "other fees" on the Proof of Claim, was charged twice by the bank. The amount allegedly comprised the "Out-of Pocket Advances" identified on Washington Federal's Exhibit 13 which listed fees and costs of $597.90 from May 18, 2001 and $1,500 in costs for the June 28, 2002 Sheriff's sale. Although Milinovich was able to identify those amounts as being credited to the benefit of the Debtors from the $66,052.59 payment in that those amounts were applied to principal, he was unable to discredit the bank's reconciliation/handling of these funds. He could not specifically point to any place in the bank's records, including the applicable payment histories, where those same amounts were applied previously or for a second time.

Milinovich also asserted that during the course of Sladick's testimony he became aware for the first time of another $2,022.50 allegedly paid twice. Milinovich derived this total by adding the $222.18 "late charge" to the $2,097.90 in "other fees" listed on the Proof of Claim and subtracting the "credit" of $297.58 also listed on the Proof of Claim. However, when asked to specifically locate where in the payment histories or other exhibits the "double dipping" occurred, he was unable to do so. The same was true for the fees and costs in the amount of $2,807.86 which Washington Federal incurred on January 6, 2003. Ex. 13. On November 5, 2005, they too were allegedly applied to principal following the $66,052.59 payment. Ex. A–35(E)(14)(b). But when pressed, Milinovich was unable to locate any time when Washington Federal failed to properly credit that same amount. Nor was he able to demonstrate any mishandling of the out-of-pocket expenses for fees and costs of

$550 and $2,295 incurred on March 21, 2003 and September 19, 2005, respectively, as listed on Washington Federal's Exhibit 12.

At first blush, the Milinovich theory is appealing. According to the Proof of Claim, the amount necessary to "cure" the loan as of the date of filing was $76,066.86. Arrearages as of that time, which were paid in full by the Debtors during the Plan, totaled $28,558.42. The Debtors made all required Plan payments including all the arrearages. Washington Federal's alleged payoff could not be correct especially in light of the "double dipping" obvious from its payment histories. Unfortunately, the testimony in support of the theory was unpersuasive and did not pass scrutiny.

Milinovich did not take any issue with Washington Federal's accounting as set forth in Exhibits 10 through 17. When directed to those exhibits in cross-examination and asked to show where the bank "double dipped," he was unable to do so. Milinovich theorized that certain fees and costs had already been paid through receipt of the arrearage payments from the Chapter 13 Trustee but when asked to locate in the record specific instances of the alleged, prior "double dipping," he was unable to do so. Often his opinions were framed in terms indicating less than a degree of reasonable certainty. At numerous times Milinovich's review of the payment history showed the principal amount due to be actually more than the amount claimed by Washington Federal. For all these reasons, the Milinovich testimony was unpersuasive and not credible.

On the other hand, the Sladick testimony, and most importantly, Exhibits 10 through 17, clearly justified Washington Federal's application of all of the payments it received both from the Chapter 13 Trustee and directly from the Debtors. The testimony and supporting documentation was credible and withstood scrutiny throughout the hearing. Therefore, assuming attorney fees in the amount of $8,050.76 were properly disbursed from the November 2005 payoff amount, and assuming the additional fees and costs claimed through December 31, 2005 are approved, Washington Federal has met its burden in regard to the proper application of payments it received and credits due the Debtors supporting a finding that as of December 31, 2005 the payoff due Washington Federal was in fact $28,937.60.

### Attorney Fees and Costs

█ Essentially all of the attorney fees and costs at issue in this case were incurred postpetition. Washington Federal is primarily requesting approval for its post-filing, preconfirmation attorney fees and costs pursuant to *11 U.S.C. § 506(b)* and its postconfirmation, predischarge attorney fees and costs pursuant to *11 U.S.C. § 1322(e)*. Because here, the Parties entered into the Mortgage in 1989, pre-dating the enactment of *11 U.S.C. § 1322(e)* in October, 1994, *Section 1322(e)* does not control. *In re Gordon–Brown,* 340 B.R. 751, 757 (Bankr.E.D.Pa.2006); *See Lundin, Chapter 13 Bankruptcy 3d Edition,* ¶ 134–1 et seq. Vol. 12, 2004. As such, the postconfirmation fees are subject to review and governed by terms of the mortgage document. *Sponaugle v. First Union Mortgage Corp.,* 40 Fed.Appx. 715 (3d Cir.2002); *Telfair,* 216 F.3d at 1339. Regardless of the vehicle used to claim fees, the standard for review utilized by this Court in approving those fees and costs, whether pre or postconfirmation, remains the same: both must be necessary and reasonable. *In re Green Valley Beer,* 281 B.R. 253, 258 (Bankr.W.D.Pa.2002), *quoting In re F.B.F. Industries, Inc.,* 1995 WL 691893, at *4 (Bankr.E.D.Pa. November 15, 1995) ("So long as the oversecured

creditor reasonably believed the fees and costs were necessary to either protect its secured interest in the collateral or to enforce that secured interest, it will be entitled to some allowance under *Section 506(b).*")

As clearly stated in Paragraph 3 of the Mortgage (Ex. CR–1), entitled "Application of Payment," the agreed upon formula for applying payments on the Mortgage obligation allowed the bank to first apply payments it receives to taxes and insurance, then to principal and interest on the outstanding original principal.[9] For purposes of the fees incurred post-confirmation, Paragraph 7 of the Mortgage document, entitled "Protection of Lender's Security," also requires that such services be "necessary" and "reasonable" requiring the Debtors to make immediate payment of the same upon notice of the bank's claim for reimbursement.[10]

Although admitting Washington Federal is entitled to some fees and costs in protecting its secured interest, the Debtors contend that much of the attorney fees currently requested by Washington Federal were neither necessary nor reasonable. However, Counsel for the Debtors merely espoused this general argument without attacking any specific time entry. Debtors contended that the majority of time spent by Counsel for Washington Federal was merely to provide a payoff figure which is something to which the Debtors were entitled without charge. Accordingly, the Debtors argued they should not be required to pay for services rendered simply for this purpose. When the Court inquired of Debtors' Counsel as to what he believed would be a reasonable amount of attorney fees, Counsel responded that "perhaps $2,000" was appropriate.[11] The only basis offered for this particular belief was Counsel's "experience" in bankruptcy cases. This explanation was not helpful.

Nor was any testimony offered by Washington Federal as to the reasonableness or necessity of services rendered on its behalf despite being given the opportunity to do so. Such testimony would also

---

9. Regardless of this clear written requirement, Washington Federal chose to first apply payments that came in on this account to the oldest outstanding payments rather than reducing the non-interest bearing tax and insurance escrows, attorney fees and late fees thereby reducing principal and accrued interest at a much faster rate than as contractually required by the loan documents. *Transcript of Status Conference Hearing on Oct. 26, 2005,* at p. 13, l. 4–16, Document No. 65. Although this manner of accounting benefits the Debtors, it is the maintenance of this type of account crediting system which has in large part has created the confusion between the parties in ascertaining the appropriate payoff due Washington Federal.

10. In relevant part, Paragraph 7 reads: "[i]f Borrower fails to perform the covenant and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property ... then Lender at Lender's option, upon notice to Borrower, may ... take such action *as is necessary* to protect Lender's interest *including, but not limited to, disbursement of reasonable attorney's fees.*" Ex. CR–1 (emphasis added). Paragraph 7 also provides that upon notice to the Debtors the amounts due for legal services paid for by the bank become immediately due with interest at the contract rate. There is no issue as to notice in this case. Furthermore, Washington Federal has waived any claim it may have for interest for unpaid attorney fees and costs.

11. At the Status Conference held on October 26, 2005, Debtors' Counsel opined that a $3,000 figure was "appropriate" even before Washington Federal's Counsel was required to expend time related to preparation for and presentation of the matter pertaining to the within evidentiary hearing. *Transcript of Status Conference Hearing Oct. 26, 2005,* at 11, l. 3–7, Document No. 65.

have been helpful to the Court.[12] Rather, Counsel simply submitted the various statements for services rendered listing chronological time entries containing, in many instances, what is referred to as "lumping" or "bundling" of time without breaking down each specific service rendered for each task assumed with a corresponding, specific "detail of time" spent for the same.

■ This Court must now determine, in light of the record before it, what transpired in the case at a particular time and coordinate what services were simultaneously being rendered. Next, the necessity and reasonableness of those services as expended individually in each instance must be considered. Finally, the reasonableness of the services for the protection of Washington Federal's secured interest must be considered in the aggregate. *In re F.B.F. Industries, Inc.*, 1995 WL 691893, at *3 (Bankr.E.D.Pa. November 15, 1995); *In re Green Valley Beer*, 281 B.R. 253 (Bankr.W.D.Pa.2002). The Parties did agree, and the Court concurs, that under the circumstances the hourly rates of $125 and $150 charged by Counsel for Washington Federal are fair and appropriate.

■ When applications are filed requesting allowance for fees and costs payable from property of the estate, as is the case here, over time, certain, definite rules and standards have commonly been applied by bankruptcy courts. The burden of proof to show reasonable and necessary fees for professional services rendered so as to establish entitlement to reimbursement rests upon the applicant. *In re Schriock Construction, Inc.*, 104 F.3d 200 (8th Cir.1997); *In re Green Valley Beer*, 281 B.R. at 255. What is ultimately ap-

proved by the Court as reasonable and necessary does not necessarily equate to the same fees charged (and paid) between the attorney and the attorney's client. Such a fee is a contractual matter between the two. In the bankruptcy context, the allowed fees may be subject to variation where creditors' and debtors' funds are being disbursed to pay secured creditor claims. *Green Valley Beer*, 281 B.R. at 255, citing *In re Harman Supermarket, Inc.*, 44 B.R. 918, 919 (Bankr.W.D.Va. 1984). The bankruptcy court enjoys very broad discretion in determining the necessity and reasonableness of attorney fees claimed by an oversecured creditor. *In re Danise*, 112 B.R. 492 (Bankr.D.Conn.1990); *In re Gwyn*, 150 B.R. 150 (Bankr. M.D.N.C.1993). In determining reasonableness, courts require fee applications to contain a certain level of content and specificity. *In re Consolidated Properties Ltd. Partnership*, 152 B.R. 452, 459 (Bankr. D.Md.1993). Unitemized disbursements for services "lumped" or "bundled" together in a single entry thereby inhibiting the Court from determining the reasonableness of the individual services rendered and the necessity/value of the service to the estate is a practice universally disallowed. *Green Valley Beer*, 281 B.R. at 259 (citations omitted). While oversecured creditors are entitled to engage counsel and pay for constant, comprehensive and aggressive representation, such creditor is not entitled to reimbursement for attorney fees for every action it takes claiming that its rights or interests have been affected. Where services are not reasonably necessary to protect its interests, or where action is taken because of a lawyer's excessive caution or overzealous advocacy, in exercise of their discretion, courts have the right and are duty-bound to disallow the

---

12. Among other things, the purpose of the evidentiary hearing was to allow Washington Federal the opportunity to provide testimony in support of its claim for fees and costs.

fees and costs requested. *Green Valley Beer*, 281 B.R. at 258 (citations omitted); *In re Oliver*, 183 B.R. 87 (Bankr.W.D.Pa.1995). An oversecured creditor should not be given a "blank check" to incur attorney fees and costs with the expectation it will automatically be reimbursed for those fees and costs out of its collateral. *In re Lund*, 187 B.R. 245 (Bankr.N.D.Ill.1995); *In re Dalessio*, 74 B.R. 721, 723 (9th Cir. BAP 1987). Finally, where the evidentiary record is inadequate, the reviewing court has authority to make an appropriate award without further pleadings or evidence, relying on its own knowledge and experience in determining reasonable and proper fee awards. *In re Gordon–Brown*, 340 B.R. 751 (Bankr.E.D.Pa.2006); *In re FBF Industries, Inc.*, 1995 WL 691893, at *7; *In re Oliver*, 183 B.R. at 91.

As previously noted, in support of its claim Washington Federal submitted various billing statements in the form of Exhibits 27 through 33 and made an oral request, without any documentary support, for additional fees incurred since December 31, 2005. Washington Federal offered this evidence as to fees and costs without any explanatory or supporting testimony despite being given an opportunity to do so at the time of the evidentiary hearing.[13] In addition to the $ 8,050.76 in fees for

which Washington Federal reimbursed itself following receipt of the November payoff monies, the bank also made claim for counsel fees incurred for the period between September 14, 2005 through December 31, 2005 as supported by Exhibits 31, 32 and 33, and pursuant to its oral request, for the period after December 31, 2005 through completion of the evidentiary hearing.

 Initially, since forming a part of the $8.050.76 reimbursement taken by the bank on November 4, 2005, it is necessary for the Court's decision to specifically approve the out-of-pocket advances identified on Exhibit 13 in the amount of $597.90 (May 18, 2001) and $1,500 (July 28, 2001) for a total of $2,097.90. Based upon the testimony presented, these amounts involve prepetition fees and costs included in the prepetition arrearage claim set forth in the Proof of Claim. As noted during the evidentiary hearing, the effect of a confirmed plan is res judicata as to all issues that were or could have been litigated. *In re Szostek*, 886 F.2d 1405, 1413 (3d Cir. 1989); *In re Bryant*, 323 B.R. 635, 639 (Bankr.E.D.Pa.2005). Therefore, consistent with the Court's trial ruling as to the effect of the confirmed Plan, these prepetition fees and costs, although not reim-

---

**13.** This Court is mindful of the requisite degree of scrutiny required by *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 847 (3d Cir.1994) when reviewing billing statements offered in support of fee applications, including the scheduling of a subsequent evidentiary hearing to allow for an explanation of the documentary records. The evidentiary hearing scheduled before this Court was convened specifically for, among other things, the taking of this type of evidence. Furthermore, based upon the representations of Counsel for Washington Federal, convening another hearing for this purpose would be futile. On numerous occasions during the hearing of this matter this Court advised Counsel for Washington Federal of the need for an evi-

dentiary record to allow the Court to properly review the request for attorney fees. *See Audio Transcript of Proceedings* dated Jan. 23, 2006, 10:25:00 to 10:26:00; 11:29:42 to 11:32:47; 1:49:13 to 1:49:40. When the Court reiterated its concerns to Counsel at the time of Washington Federal's closing, Counsel stated his testimony "wouldn't add anything more" than what his time records already admitted in the case would show. *See Audio Transcript of Proceeding* dated Jan. 23, 2006, 2:45:45 to 2:45:55. Admittedly the postpetition time spent by Washington ·Federal's Counsel began after the Debtors' initial demand for payment in July of 2005, but that, in and of itself, does not entitle Counsel to payment of all the fees claimed.

bursed to Washington Federal until November 4, 2005, are approved.

Also forming part of the $8.050.76 November 4, 2005 reimbursement are a number of entries supported by the billing statement found at Exhibit 27 arising during the period of March 1, 2002 through December 11, 2002. The case was originally filed on July 24, 2002. As such, consistent with the Court's prior ruling, all fees incurred during the period of March 1, 2002 through July 3, 2002 as itemized on Exhibit 27 are approved in the total amount of $1,037.50 (8.3 hours × $125).

■ The Court's review begins in earnest regarding the time entries represented by Exhibit 27 following July 3, 2002. Many of these are simply "blind" or "vague" entries without content, specificity or detail identifying the purpose of the service, or, are "lumped" and "bundled" entries which further inhibits the Court's ability to determine the necessity or reasonableness of the time spent. Without more, Washington Federal has failed to meet its burden to show the reasonableness of claimed fees represented by these entries. For these reasons the fees requested on August 16, September 24, 25 and 26, October 25, November 4, 12 and 13, December 3 and 4, 2002 in the amount of $862.50 (6.9 hours × $125) are denied.

■ The fees charged for the services identified in the November 6, 2002 entry were also problematic for the Court. Washington Federal seeks reimbursement for counsel fees for travel to and from Washington and Pittsburgh, PA to attend court hearings, which services, although appearing reasonable and necessary, are "lumped" together with other attorney services without identifying the specific time for each service. It is the policy of this Court to allow no more than 50% of counsel's standard hourly rate for travel unless special circumstances can be shown. No

special circumstances have been identified. Rather than simply disallowing the entire entry, the Court will take notice that round trip travel to Pittsburgh from Washington, PA approximates 1.5 hours. *See generally In re Busy Beaver Building Centers, Inc.*, 19 F.3d at 854 (judge's experience is the starting point in analyzing reasonable rates based on market rates). Therefore, the Court will allow 50% of counsel's time in this regard, reducing the November 6, 2002 entry on Exhibit 27 by 1.5 hours thereby denying an additional $187.50 (1.5 hours × $125) in fees. The remainder of time entries identified in Exhibit 27, based on the explanation contained therein, appear necessary and reasonable. Therefore, attorney fees and costs for the period ending December 11, 2002 as listed on Exhibit 27, are approved in the total amount of $1,757.86 ($2,807.86 less $1,050).

Exhibit 28 reflects attorney billing time and costs advanced on Washington Federal's behalf for the period of December 19, 2002 through March 11, 2003. The Chapter 13 Plan was confirmed by Order dated January 30, 2002. Therefore, this exhibit represents preconfirmation and postconfirmation fees and costs. As noted at the outset, the test for approving these fees remains the same: are they necessary and reasonable? A review of Exhibit 28 demonstrates that the entries for February 5 and 14, and, March 4, 2002 representing $150 in fees (1.2 hours × $125) are vague and in some instances involve "lumping." As such, the Court is unable to determine if the fees were necessary for the protection of Washington Federal's security interest as affected by the Debtors' bankruptcy and will be denied. On the December 19, 2002 entry, Washington Federal has again listed travel time at counsel's full hourly rate. Therefore, those fees shall be reduced by $187.50 (1.5

hours × $125) consistent with the Court's prior finding. The balance of fees requested appear necessary and reasonable both individually and in the aggregate. Therefore, fees requested by the bank for the period ending March 11, 2003 are approved in the amount of $212.50.

■■■ Exhibit 29 covers the period of July 26, 2005 through August 12, 2005 and once again contain many entries of "lumped" or "bundled" time with no accompanying explanation as to the necessity for the same. The entries also include reference to intra-office conferences with an attorney for Washington Federal never previously identified in the record of this proceeding. Lawyer "intra-office" group conferences are subject to greater scrutiny to protect against excessive use and "running of the meter". *See In re F.B.F Industries, Inc.,* 1995 WL 691893, at *5. Such does not appear to be the case here. The number of conferences are minimal and the parties involved are limited. Nevertheless, there is no indication as to the specific length of time for these sessions and no indication as to their purpose. The entries are inappropriately vague precluding the Court from making a determination as to necessity or reasonableness of the fees requested. Therefore, the fees requested in the entries for July 28 and 29, August 9, 10, 11 and 12, 2003, in the amount of $1,350 (9 hours × $150) are denied. The remaining entries appear necessary and reasonable to protect Washington Federal's secured position in light of the issues presented in the pending bankruptcy. Therefore, fees in the total amount of $945 ($2,295 less $1,350) are approved for this period.

On Exhibit 30 the Court is again confronted with "vague" billing entries without any explanatory note to support the necessity of the services claimed in allegedly protecting Washington Federal's se-

cured interest. As such, the fees requested in entries for August 19, 30 and 31, 2003 and September 1 and 13, 2003 will be denied. Fees in the amount of $165 (1.1 hours × $150) are approved as necessary and reasonable for this period.

In determining the principal amount due it, Washington Federal reduced the November 2005 payment by $6,382.86 and combined that amount with the $1,667.90 balance held in the "unapplied funds" account which total was then used to reimburse the bank in the amount of $8,050.76 for its prepaid attorney fees. Based on the foregoing findings as to allowed fees through September 19, 2005, it is now clear that an additional $2,872.30 ($8.050.76 less $5,178.46) should have been credited to principal as of November 4, 2005 rather than attorney fees. As such, the Debtors' principal obligation as of November 4, 2005 actually totaled only $19,746.21. A corresponding reduction in accrued interest from November 4, 2005 through December 31, 2005 in the amount of $370.04 (57 days at 12%) also applies to further reduce Washington Federal's claim.

Exhibit 31 was offered by Washington Federal in support of its claim for fees and costs incurred from September 14, 2005 through October 14, 2005. Again, the Court is confronted with the "lumping" of time, unexplained intra-office conferences and lack of any explanation of the necessity of other services. The October 14, 2005 entry again involved "lumped" or "bundled" time including the preparation of an inter-office memo. While under ideal circumstances, it is obviously helpful to identify and reduce to writing as many matters as possible in a litigation file, there is no indication of the necessity for the action listed in the October 14, 2005 entry. This Court cannot determine the necessity of the time spent and will not assess fees against the Debtors for this "lumped" time

entry. For the above reasons, the request for fees rendered on September 14, 2005, October 5, 12 and 14, 2005, are denied. Therefore, fees in the amount of $600 (4.0 hours × $150) and costs of $6.08, for a total of $606.08 are approved.

Exhibit 32 involved fees and costs incurred by Washington Federal for the period of October 17, 2005 through November 17, 2005. Although, the consistent "lumping" of entries made it difficult for the Court to assess the necessity for incurring these fees, based on the specificity of the entries and the Court's actual knowledge of services provided, the Court was generally able to ascertain that the matters involved in preparation for the evidentiary hearing. Generally, the time expended appeared necessary and reasonable in protecting the bank's secured interest. In the October 26, 2005 entry, travel time was claimed at 100% of counsel's hourly rate, but "lumped" with an unexplained intraoffice conference with other counsel. Rather than disallow the entire entry, consistent with its prior ruling in this case, the Court will allow travel time at the rate of 50% of counsel's hourly rate and allow for the identified, court appearance, thereby approving $412.50 in fees for this entry. The Exhibit also references "costs" for payment of transcribing fees for court hearings. Again, under ideal circumstances, transcripts are very beneficial to an attorney in advancing a cause on behalf of a client. However, here the Court is familiar with the hearing transcribed by Washington Federal and, under the circumstances, fails to understand the necessity for the transcribing of the same. No explanation is given as to why a transcript of this particular hearing was required. The "luxury" of a court transcript to aid

counsel in protecting Washington Federal's interests is not the type of "necessary and reasonable" expense authorized by the Mortgage documents. Therefore, for the reasons stated, no costs are allowed while fees in the amount of $2,272.50 (15.15 hours × $150) are approved.

Exhibit 31 is the final, documented billing statement for which Washington Federal seeks reimbursement. The fees requested in the exhibit appear reasonable and necessary since obviously expended in preparation for the evidentiary hearing in this matter. The entries again include the practice of "lumping". Nevertheless, the Court was able to discern the necessity and reasonableness of the services. Therefore, fees and costs incurred by Washington Federal in the total amount of $3,113.85 are approved.

As of December 31, 2005, Washington Federal claimed it was due a total of $28,937.60 which included a claim for "other fees" comprising costs and attorney fees in the amount of $7,324.93. These fees and costs are itemized on Exhibits 31, 32 and 33. For the reasons noted above, the Court has approved $6,082.43 of these fees. When coupled with the previously noted reductions in the bank's December 31, 2005 claim of $28,937.60, it is now clear Washington Federal was in fact owed a total of $24,453.06 as of that date.[14]

At the conclusion of the evidentiary hearing in this matter, Counsel for Washington Federal orally claimed additional fees and costs due Washington Federal running from the date of the last itemized billing through conclusion of this matter. *See also* Ex. 13. To date, the bank has provided no itemized documentation of its costs, if any, or services rendered during

14. This number is derived by reducing the total alleged claim of $28,937.60 by disallowed attorney fees and costs in the amount of $2,872.30 and $1,242.20, respectively, and accrued interest in the amount of $370.04.

this period. In prosecuting the evidentiary hearing and submitting all the post hearing pleadings, the bank's Counsel clearly provided additional services in advancing the cause of Washington Federal and protecting its secured interest. But once again, due to the manner in which it has been presented, Washington Federal makes it difficult for the Court to "devine" the basis for its claim. Admittedly, Counsel participated in an evidentiary hearing running the course of one day and consisting of approximately 6 hours of time. Based on the Court's prior rulings, travel time of 1.5 hours at 50% of Counsel's standard hourly rate will be allowed. No more than 4 hours of time would have reasonably been necessary to prepare for the hearing. Post-trial pleadings were filed which should have taken no more than an additional 4 hours of attorney time. Therefore, additional fees in the amount of $2,212.50 (14.75 hours × $150) are approved for this time period as reasonable and necessary.

■ Based on the foregoing review of individual entries, the Court has determined that, under the circumstances, attorney fees and costs in the total amount of $11,285.29 were, in a vacuum, "necessary and reasonable" for the protection of Washington Federal's secured interest. None of the approved fees relate "simply to providing a payoff figure." The fees and costs directly relate to protection of the bank's secured interests after the payoff figure it provided was disputed by the Debtors. However, the Court's review does not end here. Before finally approving the requested fees and costs, this Court must also determine whether the fees and costs charged for the task at hand, "in the aggregate for (the) given project," are also reasonable. *FBF Industries, Inc.,* 1995 WL 691893, at *3. Stated another way, in light of the Debtors' claim

of excessiveness and "proportionality" objection to the claimed fees and costs when compared to the total "risk" or amount owed, in the aggregate, is the claim as a whole, reasonable? *Green Valley Beer,* 281 B.R. at 262. Proportionality of the creditor's claim for reimbursement, in relation to the creditor's total claim, exclusive of the requested fees and costs, cannot be ignored. *Lund,* 187 B.R. at 251.

■ It is now clear that Washington Federal was correct in its original assertion that even following the November, 2005 payment of $66,052.29, a principal balance, now adjusted to $19,746.21, exclusive of approved attorney fees and costs, was owed by the Debtors. As of the November, 2005 payment, the Debtors took the position that nothing was owed. It was not until the time of the evidentiary hearing that the Debtors finally acknowledged that $10,395 was actually due on the principal. The Debtors had previously acknowledged some fees and costs were due. Therefore, prior to the evidentiary hearing, the remaining amount due on Washington Federal's security interest was substantially in jeopardy. As of the evidentiary hearing, the bank's secured interest continued to be in jeopardy to a large extent. As such, Washington Federal was well within its rights in defending and protecting that interest. As required by the Mortgage documents, the Debtors must now assume responsibility for the "reasonable and necessary" fees and costs expended by the bank in protecting its interest.

Admittedly, arriving at the proper Mortgage payoff amount was difficult to determine. Ideally, one would hope that simply examining the bank's computer printout setting forth the current outstanding indebtedness, after application of all payments, would accomplish the goal with need for little, further explanation or clari-

fication. Unfortunately, that often is not the case when tracking a payment history which is complicated by a bankruptcy filing. Compounding the problem in this case was Washington Federal's continued processing of Plan payments according to its modified formula rather than the contract document, the amounts set forth in the Proof of Claim, or, as received monthly from the Chapter 13 Trustee. Although in the end, this approach actually benefitted the Debtors by first reducing an interest generating item while waiting to reimburse itself for out-of-pocket advances towards non-interest bearing attorney fees and costs, using this approach did complicate the ability of the Parties to achieve an early "meeting of the minds" as to an appropriate payoff amount. Obviously, the Debtors' expectations were not met when they received the original payoff information from Washington Federal. They apparently anticipated a loan payment history which contemporaneously reflected application of their regular and consistent Plan payments from the beginning of the Chapter 13 through the time of their last payment. When the Debtors did not receive such an itemization they unilaterally determined what they believed an appropriate figure for satisfaction of Washington Federal's claim and paid that amount.

As gleaned from the pleadings and arguments of counsel, prior to filing the within bankruptcy, the relationship between the Debtors and Washington Federal was contentious and extremely adversarial. Apparently this was due to the Debtors' numerous, prior bankruptcies filed on the eve of several foreclosure sales. Obviously this history accounts for the inability of the Parties to meet and amicably resolve the pending payoff dispute, or at least find some common ground, prior to filing the within matter and generating the extensive attorney fees incurred in processing and defending the action. There is nothing in the record to otherwise explain the inability of the Parties to review and resolve the payoff dispute before resorting to the courts.

It is now clear, after a thorough, hindsight review of all the evidence, that Washington Federal's calculation of the loan payoff was basically correct. As such, in light of the issues presented and balancing the interests of both Parties in light of these facts, it is not appropriate for the Court to limit the award of fees preliminarily approved based on a "proportionality" argument. Washington Federal's actions in defending and protecting its secured interest, in the aggregate, was appropriate, necessary and reasonable.

There is no indication of any overzealous pursuit by Washington Federal in collection of its claim. The bank's actions were, as represented by the approved fees, in direct response to the Debtors' refusal to make payment on the outstanding indebtedness during the processing of this claim. This is not a case where the cost of collection even meets the amount of the debt let alone exceeds it. *See Lund,* 187 B.R. at 260 ("To allow all the fees sought, more than triple the principal of the total claim, absent the fees, skews the dispute and turns the client's basic claim into its lawyer's quest into the opponent's pocketbook for legal fees.") Here it appears the Debtors somewhat arbitrarily refused to acknowledge any additional amounts due on their obligation only to later agree that in excess of $12,000 remained outstanding yet, even then, voluntarily chose not to make any further payment to Washington Federal until after the evidentiary hearing. The Debtors' failure to tender the proper payoff amount has caused Washington Federal to incur additional fees and costs in protecting its interest for which the Debtors bear the risk for payment. Un-

der these facts, the expenditure of $11,000 in fees and costs in defending a claim approaching $20,000 is not so egregious or unreasonable as to require a reduction in the claim for fees and costs on that basis alone.

### CONCLUSION

For the reasons expressed above, the Court finds that the application of payments made by Washington Federal was appropriate and the same is hereby approved subject to a reduction in the amount of attorney fees reimbursed to it on November 4, 2005, as well as interest accruing on that amount, with appropriate credit to the Debtors. Claims by the Debtors as to the "insufficiency" of the computer program utilized by Washington Federal and the effect of the date on which payments received by the Chapter 13 Trustee were credited by the bank, were unsupported by the evidence and therefore denied. The principal balance of the Debtors' loan as of December 31, 2005, was $19,746.21. Washington Federal's total claim as of December 31, 2005 was $24,362.86. Additional attorney fees since December 31, 2005 in the amount of $2,212.50 are approved. Washington Federal's total claim as of the date of this Opinion is $26,575.36, plus interest, subject to further reduction as a result of the $8,265.22 payment made to Washington Federal on February 28, 2006. Interest shall accrue on the unpaid principal balance at the contract rate of 12% per year.[15] An appropriate Order shall issue.

### ORDER OF COURT

*AND NOW,* this *25*th *day of* July, 2006, *for the reasons set forth in the accompanying Memorandum Opinion,*

It is hereby **ORDERED, ADJUDGED** *and* **DECREED** that Washington Federal Savings Bank's *Motion for Approval of Charges and Application of Payments Under Loan Agreement, Including Counsel Fees, Nunc Pro Tunc, Under 11 U.S.C. § 506 and 11 U.S.C. § 1322(e), or for Amendment of Proof of Claim and/or Reconsideration of Claim Under F.R.B.P. 3008* is **GRANTED** and its application of payments **APPROVED** to the extent that, under the applicable loan documents, as of December 31, 2005 a total of $24,362.86 remained due and owing from the Debtors, Joel R. McGuier and Kelley Ishler McGuier, with interest accruing at the rate of 12% per year after December 31, 2005 on the unpaid principal balance.

It is **FURTHER ORDERED** that additional attorney fees in the amount of $2,212.50 are **APPROVED** thereby increasing the total claim of Washington Federal Savings Bank against the Debtors, Joel R. McGuier and Kelley Ishler McGuier, to $26,575.36 as of the date of this Order, with interest accruing balance at the rate of 12% per year after December 31, 2005 on any unpaid principal.

It is **FURTHER ORDERED** that, while the within bankruptcy remains open, Washington Federal is precluded from assessing any further attorney fees or costs in collection of the Mortgage indebtedness involved in this matter without further application to, and Order of this Court, after notice and hearing.

---

**15.** This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits, and arguments of Counsel, regardless of whether they are specifically referred to in this Opinion.